STATE v. PETER A. GEROU.

168 N. W. (2d) 15.

May 2, 1969—No. 41138.

*C. Paul Jones,* State Public Defender, and *Robert E. Oliphant,* Assistant State Public Defender, for appellant.

*Douglas M. Head,* Attorney General, *Richard H. Kyle,* Solicitor General, and *Robert A. Peterson,* County Attorney, for respondent.

Heard before Knutson, C. J., and Rogosheske, Sheran, Peterson, and Frank T. Gallagher, JJ.

SHERAN, JUSTICE.

Appeal from a judgment of the district court entered upon a conviction of the crimes of burglary and theft.

Defendant was charged by information with the crimes of burglary[1]

---

[1] Minn. St. 609.58, subd. 2, provides in part: "Whoever enters a building without the consent of the person in lawful possession, with intent to commit a crime therein, commits burglary and may be sentenced as follows:

\* \* \* \* \*

"(3) In any other case, to imprisonment for not more than five years or to payment of a fine of not more than $5,000, or both, if the intent is to steal or commit a felony or gross misdemeanor or to imprisonment for not more than one year or to payment of a fine of not more than $1,000, or both, if the intent is to commit a misdemeanor."

and theft [2] allegedly occurring during the night of November 25–26, 1966, at the place of business of Minnkota Iron and Steel Supply Company located about a mile and a half east of East Grand Forks, Minnesota. In the District Court of Polk County the jury returned a verdict of guilty on both counts. Defendant was sentenced to an indeterminate term not to exceed 5 years on each count, the sentences to run concurrently.

The site of the crime is a steel building about 80 feet long by 40 feet wide used by Minnkota Iron and Steel exclusively for the purposes of its business. The building was locked up about 5 p. m. at the close of business on Friday, November 25, 1966. On the following morning, at about 8 a. m., employees arriving at work found that a glass window in the building had been broken. A 50-gallon barrel used to store copper wire had been rolled from the warehouse. The contents of this barrel had been removed. Pieces of copper wire were scattered about. Inside the building another barrel, also used for the storage of copper wire, was found tipped over and some of its contents were missing. Ordinarily, a barrel holds about 300 pounds of copper wire.

On Saturday, November 26, 1966, defendant sold 258 pounds of No. 1 copper wire and 28 pounds of No. 2 copper wire to the Fargo Iron and Metal Company, Inc., receiving $104.70 for it.

On the evening of the theft at about 6:30 p. m., defendant's automobile

---

[2] Minn. St. 609.52, subd. 2, provides in part: "Whoever does any of the following commits theft and may be sentenced as provided in subdivision 3:

"(1) Intentionally and without claim or right takes, uses, transfers, conceals or retains possession of movable property of another without his consent and with intent to deprive the owner permanently of possession of the property."

Section 609.52, subd. 3, provides: "Whoever commits theft may be sentenced as follows:

\* \* \* \* \* \*

"(2) To imprisonment for not more than five years or to payment of a fine of not more than $5,000, or both, if the value of the property or services is more than $100 but not more than $2,500;

\* \* \* \* \* \*

"(5) In all other cases where the value of the property or services is $100 or less, to imprisonment for not more than 90 days or to payment of a fine of not more than $100 \* \* \*."

was observed parked along the roadway in front of Minnkota Iron and Steel by a member of the Minnesota Highway Patrol. No one was in it at the time.

Upon appeal it is contended:

(1) The information was defective because it did not allege that the building involved was a structure suitable for affording shelter for human beings, as defined in Minn. St. 609.58, subd. 1(2).

(2) The trial court erred in refusing to grant defendant's motion to dismiss the burglary count because the building involved was not proved to be suitable for shelter for human beings.

(3) The evidence does not support a finding that the value of the property taken was more than $100.

(4) The verdict of guilty of theft cannot be sustained in view of the fact that the copper wire allegedly stolen was not produced at trial.

■ The information charges that on or about November 26, 1966, defendant entered a "metal building and business place located in Section 7 in Huntsville Township, Polk County, Minnesota, and known and described as 'Minnkota Iron and Steel Supply Company building,' * * * owned by and in the lawful possession of Earl Kushner," without his consent and with the intent to commit a felony, i. e., theft.

The function of the information is to inform the defendant of the crime with which he is charged. It should allege with certainty all the particular facts necessary to bring the case within the meaning of the statute. State v. Britt, 279 Minn. 260, 156 N. W. (2d) 261. In our judgment, the description of the building as it appears in the information, read in light of the burglary statute to which it refers, was sufficient.

■ Before the enactment of the Criminal Code of 1963, Minn. St. 1961, c. 621, the former chapter, enumerating "OFFENSES AGAINST PROPERTY BY FORCE," which included the crime of burglary, contained a definition section, § 621.01. Subd. 4 of that section provided: "The word 'building' means every house, vessel, railway car, tent, shop, or other structure suitable for affording shelter for human beings, or appurtenant to or connected with a structure so adapted."

When the 1963 Code was enacted, the definition of the word "building"

as it applied to the offense of burglary was made part of the burglary statute, Minn. St. 609.58, subd. 1(2). It provides: " 'Building' includes a dwelling or other structure suitable for affording shelter for human beings or appurtenant to or connected with a structure so adapted, and includes portions of such structure as are separately occupied."

The Advisory Committee Comment on the burglary statute explains the enactment of the definition as follows: "This contains the substance of the definitions appearing in Minn. St. § 621.01, Subds. 3 and 4. Dwelling house, however, is not separately defined in the recommended provision." 40 M. S. A. p. 535.

The words "other structure suitable for affording shelter for human beings" appear both in the former § 621.01, subd. 4, and in § 609.58, subd. 1(2). It is evident, because of the usage of the exact words of the former statute, as well as from the comment of the Advisory Committee, that there was no intent to change the substantive law as to the type of building in which a burglary could occur.

In our judgment, a warehouse of the kind described in the evidence in this case is "suitable for affording shelter for human beings" within the meaning of § 609.58. It was used for that purpose by those who worked there. See, State v. Golden, 86 Minn. 206, 90 N. W. 398; cf. State ex rel. Webber v. Tahash, 277 Minn. 302, 152 N. W. (2d) 497.

■ It was necessary for the jury to find that the value of the property taken exceeded $100 but not $2,500. § 609.52, subd. 3(2). Defendant contends that the evidence does not sustain this finding. "Value" means the market value at the time of the theft or, if the market value cannot be ascertained, the cost of replacement of the property within a reasonable time after the theft. § 609.52, subd. 1(3). Defendant concedes that if the state had proved that the quantity of wire taken from Minnkota Iron and Steel was as alleged, the verdict of guilty would have support in the evidence. He contends, however, that the evidence does not establish what quantity of wire actually was taken.

The jury could find that on November 25, 1966, about 300 pounds of copper wire was stolen from the Minnkota Iron and Steel building. Defendant admittedly sold 286 pounds of copper wire to a scrap dealer in Fargo on the following day. Earl Kushner of Minnkota Iron and Steel

identified the scrap wire which defendant had sold to the Fargo dealer as the copper wire stolen from his building.

Defendant testified that most of the wire he had sold had been found by him at a construction site in East Grand Forks where ground cable was being installed. However, the record suggests that the ground cable in question was not copper, but aluminum.

Although the copper wire in the barrels at the Minnkota Iron and Steel warehouse had not been weighed before the theft, there is testimony which supports the inference that the weight of the copper wire in the barrels was between 250 and 300 pounds, depending upon how heavily packed the barrels were. There is a significant correspondence between the weight of the copper wire sold by defendant the morning after the burglary (286 pounds) and the amount which appeared to have been taken.

The evidence was sufficient to support the inference that the copper wire sold by defendant on November 26, 1966, was stolen by him on November 25. State v. Dancyger, 29 N. J. 76, 148 A. (2d) 155, certiorari denied sub nom. Dancyger v. New Jersey, 360 U. S. 903, 79 S. Ct. 1286, 3 L. ed. (2d) 1255; Bride v. State, 86 Tex. Cr. 535, 218 S. W. 762. So long as the evidence was adequate to show a fair market value of the property taken was over $100, this element of the crime is established. State v. Voss, 192 Minn. 127, 255 N. W. 843. See, also, State v. Biehoffer, 269 Minn. 35, 129 N. W. (2d) 918; State v. Jordan, 272 Minn. 84, 136 N. W. (2d) 601.

■ The fact that the copper wire was sold before trial and was not available for introduction into evidence does not vitiate the conviction.

Affirmed.