## STATE v. ERNEST MATOUSEK.

178 N. W. (2d) 604.

June 19, 1970—No. 42160.

*C. Paul Jones*, State Public Defender, and *Kenneth F. Kirwin*, for appellant.

*Douglas M. Head*, Attorney General, *James M. Kelley*, Assistant Attorney General, and *Darrell C. Hill*, Special Assistant Attorney General, for respondent.

Heard before Knutson, C. J., and Nelson, William P. Murphy, Otis, and James F. Murphy, JJ.

JAMES F. MURPHY, JUSTICE.*

This is an appeal from a judgment of the district court adjudging defendant, Ernest Matousek, guilty of the crime of theft in violation of Minn. St. 609.52, subd. 2, and from an order denying his motion for a new trial.

In April 1968, Hopkins Motor Sales, a car dealership located in Hopkins, Minnesota, took as a trade-in on a new car a 1967 Pontiac GTO. The car was parked on the Hopkins Motor Sales used-car lot.

On the night of April 23-24, a person or persons unknown stole this car from the lot. Its whereabouts remained unknown to the authorities until August 20, 1968. On that day the sheriff of

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

McLeod County, Minnesota, went to the farm owned by the parents of Lonnie Bonine to search for a stolen car. He was not searching for the 1967 Pontiac GTO but did discover it hidden in the woods on the farm. When the sheriff found the car, there was not much left of it except the frame. The motor, transmission, the entire front assembly, fenders, hood, seats, doors, etc., had all been removed.

The following facts were discovered and proved at trial: Sometime in May 1968, one Gary Feldt drove to Lonnie Bonine's home in a 1967 Pontiac GTO. Bonine then rode with Feldt in the GTO to the farm owned by defendant's mother, where defendant lived. At this time the car was in good condition. While visiting with defendant Bonine noticed that the defendant and Feldt were removing the engine from a 1964 Pontiac. Two days later Feldt again picked up Bonine at his home and drove him in the 1967 Pontiac GTO to defendant's home. They again talked and Bonine observed that the engine had been removed from the 1964 Pontiac. The next day defendant picked up Bonine and drove him back to defendant's farm. Bonine saw the 1967 Pontiac GTO in the chicken house. The hood, transmission, and engine of the car had been removed.

Leslie Dolezal, who had lived on the Matousek farm since 1950, first saw the 1967 Pontiac GTO when a young man, whom Dolezal did not recognize other than knowing he was not the defendant, drove the car to the farm. Dolezal later saw the car in the chicken house on the farm, where defendant worked on the car, transferring its engine to a 1964 Pontiac. Dolezal did not actually see the defendant transfer the engine, but he did see him working on both cars.

Harlan Langholtz, who worked at Como Fixture Company, learned from an unnamed fellow employee that defendant had a Pontiac engine for sale. Langholtz testified that the defendant agreed to sell him a 1967 GTO 400 cube motor for $300, plus installation costs of $25. Langholtz delivered his Pontiac to defend-

ant and on May 17, 1968, was at the Matousek farm when the defendant installed the engine in his 1964 Pontiac.

Wayne Pfiefer, another friend of defendant, helped defendant and Bonine pull the 1967 Pontiac GTO from defendant's farm to the Bonine farm. Pfiefer testified that the only thing then missing from the car was the engine. It was at this time that Pfiefer learned the car was stolen. He did not say who told him because he remembered nothing that was said, but he testified that defendant was the only one he talked to on the way to the Bonine farm.

Defendant was first charged with stealing the car but that indictment was dismissed and he was subsequently indicted by the grand jury for theft of the engine. The defendant was tried by a jury and convicted. Additional facts will be discussed as they relate to the specific issues raised by the defendant's numerous claims of error on the part of the trial court.

■ The first issue raised by defendant is whether the erroneous allegation of ownership of the car in the indictment is fatal. The indictment names as the owner of the 1967 Pontiac GTO Hopkins-Dodge Incorporated. In fact, the name of the owner was Hopkins Motor Sales. Through the general manager of Hopkins Motor Sales, the prosecution established that in promotion and sales advertisement Hopkins Motor Sales is referred to as Hopkins-Dodge; that there is only one Dodge dealer in Hopkins; and there is no confusion in the public mind, whether it is referred to as Hopkins-Dodge or as Hopkins Motor Sales.

Minn. St. 628.16 provides that an erroneous allegation as to the person injured is not material if the offense is sufficiently described to identify the act. Under the circumstances herein, the erroneous allegation of ownership does not render the indictment fatally defective. State v. Postal, 215 Minn. 427, 10 N. W. (2d) 373.

■ The second issue defendant raises is that the court erred in refusing to instruct the jury that Pfiefer and Bonine could be considered accomplices and their testimony must, therefore,

meet the requirements of Minn. St. 634.04. A person is an accomplice within the meaning of § 634.04 when that person could have been indicted and punished for the offense with which defendant is charged. State v. Mastrian, 285 Minn. 51, 171 N. W. (2d) 695; State v. Hopfe, 249 Minn. 464, 82 N. W. (2d) 681. The indictment herein charges defendant with the crime of knowingly transferring the GTO engine to Harlan Langholtz without the consent of the owner and with the intent to permanently deprive the owner of its possession. There appears to be no evidence linking either witness with the transfer of the motor to Langholtz. At most, Bonine and Pfiefer helped the defendant in transporting the vehicle, with the engine missing, from the Matousek farm to the Bonine farm for storage. Neither of them received any money from the sale of the motor. At best, it can be said that they both were "accessories after the fact" which is not a crime in Minnesota. State v. Lyons, 144 Minn. 348, 175 N. W. 689.

Defendant also contends that Bonine and Pfiefer may be accomplices under Minn. St. 609.05, subd. 1, which provides:

"A person is criminally liable for a crime committed by another if he intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime."

We are unable to find any evidence that would permit any inferences that the witnesses Bonine and Pfiefer intentionally aided the defendant so as to become responsible for the crime pursuant to that statute.

We find no error on the part of the trial court in refusing to instruct the jury on the law of accomplices.

The third issue raised by the defendant is whether introduction under the Uniform Business Records as Evidence Act, Minn. St. 600.02, of three warranty repair orders which contained the motor number of the engine that was in the 1967 Pontiac GTO violated defendant's Sixth Amendment right to confrontation of witnesses against him. At the time this evidence was introduced, defense counsel objected on the grounds of lack

of foundation and not the best evidence. No hearsay or Sixth Amendment objection was made. Therefore, it is possible to dismiss this issue for failure to properly raise it; but because it is an important issue that apparently has not arisen previously in this state, it will be considered on the merits. To do so will require a further recitation of the facts.

The evidence shown by the repair bills to which defendant objects is very important to the state's case, for it is only in these warranty repair orders that the motor number of the 1967 Pontiac GTO engine was recorded. The state proved by means of serial numbers that the car stolen from the Hopkins Motor Sales used-car lot was the same one that was found on the Bonine farm. Unfortunately, Hopkins Motor Sales kept no record of the engine number. The state was able to ascertain the number of the engine that defendant put in Langholtz's 1964 Pontiac was 408803. Because no one directly involved knew or had a record of the number, the state sought to find a record of it from prior owners. In doing so the state located three carbon copies of warranty repair orders, which were offered and received in evidence. These copies of warranty repair orders were obtained from Hansord Pontiac, the original seller of the 1967 Pontiac GTO, and contained a stamped imprint from the warranty identification plate of the vehicle indicating that the motor number of the 1967 Pontiac GTO stolen from Hopkins Motor Sales was No. 408803. The copies were introduced through the service manager of Hansord Pontiac. They were prepared in the ordinary course of business and qualified under the Uniform Business Records as Evidence Act. There was sufficient foundation for their admission. Schoonover v. Prudential Ins. Co. 187 Minn. 343, 245 N. W. 476; Lund v. Village of Princeton, 250 Minn. 472, 85 N. W. (2d) 197.

The question of confrontation is raised because no witness actually saw the motor number on the engine when it was in the 1967 Pontiac GTO.

The Sixth Amendment of the United States Constitution and

Minn. Const. art. 1, § 6, each provides that in "all criminal prosecutions the accused shall enjoy the right * * * to be confronted with the witnesses against him." The right of confrontation has been held to mean the right to cross-examine such witnesses. Pointer v. Texas, 380 U. S. 400, 85 S. Ct. 1065, 13 L. ed. (2d) 923. It appears from the various decisions that the admissibility in evidence of business records depends upon the purpose for which they are offered. If they are offered to prove an essential element of the crime or connect the defendant directly to the commission of the crime, then they must be proved through persons having personal knowledge of the element or connection and such persons must be available for cross-examination. If, instead of producing the person who has personal knowledge, the state relies on documents made by such person or recorded testimony, the defendant has been denied his right to confront the witnesses against him. Barber v. Page, 390 U. S. 719, 88 S. Ct. 1318, 20 L. ed. (2d) 255; Pointer v. Texas, *supra;* State v. Tims, 9 Ohio St. (2d) 136, 224 N. E. (2d) 348.

However, the introduction of the warranty repair orders herein did not violate defendant's right to confrontation of witnesses against him. The orders listing the engine number did identify the property that defendant was accused of stealing, but they neither connected the defendant directly with the crime, as the recorded testimony did in the Pointer case, nor did they prove an element of the crime as the doctor's report did the Tims case.

The Federal courts in criminal prosecutions have had occasion to rule on the admissibility of business records under the Federal Records Act, 62 Stat. 945, as amended by 65 Stat. 206 and 75 Stat. 413, 28 USCA, § 1732 [a], which is similar to Minn. St. 600.02 with reference to a denial of right of confrontation. In McDaniel v. United States (5 Cir.) 343 F. (2d) 785, 789, the court states:

"Appellant next argues that the admission of Exhibit 986 constituted a denial to him of his right of confrontation as guaran-

teed ·in· a criminal prosecution. The United States Constitution, Amendment VI. This question may arise when a document falling under 28 U.S.C.A. § 1732(a) is offered at the trial: Does that Statute transgress the right of confrontation granted by the Sixth Amendment? We do not believe that all documents covered by the Statute in all cases are admissible in a criminal trial, but the trial judge has the duty to determine in each instance whether such documents are constitutionally admissible under the Sixth Amendment guarantee of confrontation. * * * [I]t has been customarily held that the right of confrontation may not be invoked to exclude evidence otherwise admissible under well-established legitimate exceptions to the hearsay rule. Kay v. United States, 255 F. 2d 476, 4 C.C.A. (1958); Matthews v. United States, 217 F. 2d 409, 5 C.C.A. (1954); United States v. Leathers, 135 F. 2d 507, 2 C.C.A. (1943); 5 Wigmore, Evidence, 1397."

See, also, United States v. Re (2 Cir.) 336 F. (2d) 306.

We conclude that the defendant's constitutional right of confrontation was not violated.

■ The next issue raised by defendant is whether the introduction of the warranty repair orders was a violation of the best evidence rule. The best evidence rule is merely a name for a rule which requires the contents of a writing to be proved by the writing itself if it is available. Buffalo Ins. Co. v. United Parking Stations, Inc. 277 Minn. 134, 152 N. W. (2d) 81; State v. De-Gidio, 277 Minn. 218, 152 N. W. (2d) 179. The rule applies only when the contents of the writing are in issue; it does not apply when it is only collaterally involved. Stevens v. Minneapolis Fire Dept. Relief Assn. 219 Minn. 276, 17 N. W. (2d) 642; Belle City Malleable Iron Co. v. Clark, 172 Minn. 508, 215 N. W. 855. The testimony established that the original repair orders had been forwarded in the regular course of business to the manufacturer in Detroit. The fact that copies instead of originals were used does not make them inadmissible. Anderson v. Johnson, 74 Minn. 171, 77 N. W. 26; International Harvester Co. v. Elfstrom, 101

Minn. 263, 112 N. W. 252. Under these circumstances there is no valid reason for not treating the carbon copies as the best evidence.

■ The last two issues raise the question of whether the evidence is adequate to establish the market value of the engine as being over $100. This court has laid down the rule that as long as the evidence is adequate to show the fair market value of the property taken as being over $100, the value element of the crime of theft is established. State v. Gerou, 283 Minn. 298, 168 N. W. (2d) 15; State v. Biehoffer, 269 Minn. 35, 129 N. W. (2d) 918; State v. Jordan, 272 Minn. 84, 136 N. W. (2d) 601; State v. Voss, 192 Minn. 127, 255 N. W. 843. The facts are that less than a month after the theft of the automobile defendant was willing to sell the engine for $300; that Langholtz did, in fact, pay $300 for the engine, plus $25 installation costs and an additional $15 for incidentals; and that Langholtz, a truckdriver, testified that the price was reasonable. The evidence was sufficient to establish the value of the engine to be over $100.

Defendant also argues that because the indictment alleges the value of the engine to be between $300 and $350, the state must prove that this is its value. Of course, the state must prove every statutory element of the crime, but when the indictment is more specific it is merely surplusage and, as long as the statutory elements are proven, that is sufficient. State v. Gerou, *supra*.

The judgment of conviction is affirmed.

Affirmed.