**STATE of Minnesota, Respondent,**

v.

**Patrick E. WALKER, Appellant.**

No. 51652.

Supreme Court of Minnesota.

May 21, 1982.

C. Paul Jones, Public Defender, and J. Christopher Cuneo, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Gary Hansen and John H. Daniels, Jr., Sp. Asst. Attys. Gen., St. Paul, Gaylord A. Saetre, Jr., County Atty., Long Prairie, for respondent.

OTIS, Justice.

As a result of evidence discovered on November 27, 1979, by stopping a truck driven by defendant's brother in which defendant was a passenger, defendant and his brother were charged and convicted in district court of burglary and theft based on removing three calves from two different farms earlier that morning. Defendant was sentenced to two concurrent 5-year prison terms. The issues raised are: (1) the legality of his arrest; (2) the propriety of charging theft instead of cattle rustling; (3) the applicability of the burglary statute; and (4) the fairness of the trial. We affirm.

■ 1. Defendant's first contention is that there was no probable cause for his arrest and that therefore the seizure of his boots, which connected him to the crimes, was unlawful.

The truck in question was stopped in Alexandria at 5 a. m. because defendant's brother's driver's license was under suspension. When the officer who stopped the truck was writing out the ticket, other officers who were routinely backing up the officer in charge arrived and spotted calves in the truck. Upon being questioned, defendant's brother said that he had gotten them from his father-in-law in Clarissa and was taking them to the sales barn in Long Prairie. Because defendant and his brother were not farmers and both had prior difficulties with the law, and because of the time of night, and the fact that Alexandria was not en route from Clarissa to Long Prairie, the officers asked defendant and his brother to accompany them to the nearby police station so that they could call defendant's brother's father-in-law. The call revealed that the calves were not from the father-in-law's farm. Thereupon defendant and his brother were formally arrested.

We need not decide the issue of whether defendant and his brother were placed under arrest when they were asked to accompany the officer to the station. Cases bearing on that issue include *Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981); *United States v. Men-*

*denhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); and *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). Assuming, as the trial court did, that defendant and his brother were under arrest, we conclude that the arrest was legal because facts known to the arresting officers sufficiently established not only probable cause to believe that a theft had been committed but that both defendant and his brother were involved in it. *See State v. Compton*, 293 N.W.2d 372 (Minn.1980).

2. Defendant's next contention is that the prosecutor did not have authority to charge him with theft because the legislature has enacted a more specific statute dealing with cattle rustling, indicating a legislative intent that all cattle rustling be dealt with under that statute rather than the theft statute. Appellant cites *State v. Kalvig*, 296 Minn. 395, 209 N.W.2d 678 (1973), where we held that the legislature's enactment of a law making welfare fraud a misdemeanor indicated an intent that the offense was of a type to be prosecuted as a misdemeanor, and not as a felony under the theft statute.

■ The basic rule, applied in *Kalvig*, is that, absent legislative intent to the contrary, and absent discrimination against a particular class of defendants, a prosecutor may charge under any statute which is violated. *See United States v. Batchelder*, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979).

■ Cattle rustling is a felony punishable by 5 years' imprisonment if the cattle taken are valued at more than $300 and less than $2,500, whereas theft is punishable by 5 years' imprisonment if the property taken is valued at more than $100 rather than $300. *Compare* Minn.Stat. § 609.551, subd. 1(b) (1980), *with* Minn.Stat. § 609.52, subd. 3(2) (1978). In this case the state's uncontradicted evidence established that the cattle in question were worth $425. Accordingly there is no need to decide the issue of whether *Kalvig* requires prosecution of defendant for cattle rustling, for if defendant

had been prosecuted for cattle rustling he would have been subject to the same punishment.

3. Defendant next contends that his burglary conviction was based on entering a structure which is not a "building" as that term is used in the burglary statute.

■ Minn.Stat. § 609.58, subd. 1(2) (1980) defines "building" as follows:

"Building" includes a dwelling or other structure suitable for affording shelter for human beings or appurtenant to or connected with a structure so adapted, and includes portions of such structure as are separately occupied.

The test is whether the structure is "suitable for affording shelter for human beings." In *State v. Bronson*, 259 N.W.2d 465, 466 (Minn.1977), we held that although one wall had been removed at the time of the burglary, a structure which had been used as a basketball arena and which was being converted into an ice arena was a "building", since it provided shelter (however incomplete) for the people who were remodeling the building. *State v. Gerou*, 283 Minn. 298, 168 N.W.2d 15 (1969), likewise held that a warehouse which afforded cover for people who worked there was "suitable" for shelter under the statute. Defendant contends that this case is governed by *State ex rel. Webber v. Tahash*, 277 Minn. 302, 152 N.W.2d 497 (1967). There we held that a toolshed on an unoccupied farm which was capable of sheltering people was not a "building" because it was not then suitable for shelter.

■ The building entered in this case was an 18 × 65 foot structure about 15 years old attached to a barn which was even older. The structure was not in "real good repair" but it had a roof and its walls were "fairly sound." The owner did not keep the structure well maintained and therefore housed his milking cows in the barn but not his calves. It had no heat or electricity but did have water through a hose from the barn. It provided adequate winter shelter for animals. On cross-examination the owner admitted the building in its present condition was not suitable for sheltering humans. On redirect he stated that the building would shelter people from the elements.

The issue was submitted to the jury and the jury determined that the structure was a "building." Although the structure arguably was similar in some respects to the toolshed determined not to be a "building" in *Webber*, a key difference is that the structure here was attached to a dairy barn, in which the owner of the stolen cattle in fact found shelter as he performed his daily farm chores. Thus, this case is more analogous to the warehouse in *Gerou* and the arena in *Bronson*.

Defendant's final contentions relate to the fairness of his trial.

■ (a) First, defendant contends that he was prejudiced by the prosecutor's unintentional elicitation of evidence that defendant was given a *Miranda* warning. This contention is answered by *LaMere v. State*, 278 N.W.2d 552 (Minn.1979), where we held that similar testimony was harmless error.

■ (b) Defendant next asserts that an opinion rendered by a sheriff's deputy that the boots of defendant and his brother made the footprints which he observed and photographed at the scene of the theft was inadmissible.[1]

The evidence in this case was not expert testimony but a lay opinion. Minn.R.Evid. 701, provides:

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

Minn. 424, 176 N.W.2d 254 (1970).

---

1. The leading pre-rules case dealing with footprint evidence in Minnesota is *State v. Hall*, 286

In this case the witness himself made it clear, as did the court in its cautionary instructions, that although the witness was no expert, he was of the opinion the boots of defendant and his brother had made the footprints he observed and photographed at the scene of the crime. With a proper foundation for this testimony, given the liberality of the rule, we are satisfied that the trial court did not err in admitting this evidence.

Affirmed.