*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1500**

State of Minnesota,
Respondent,

vs.

Anthony Thomas Leonsaco,
Appellant.

**Filed December 1, 2014
Affirmed
Johnson, Judge**

Kanabec County District Court
File No. 33-CR-12-361

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Barbara McFadden, Kanabec County Attorney, Reese Frederickson, Assistant County Attorney, Mora, Minnesota 55051 (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Anders J. Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Worke, Presiding Judge; Johnson, Judge; and Reyes, Judge.

UNPUBLISHED OPINION

**JOHNSON**, Judge

A Kanabec County jury found Anthony Thomas Leonsaco guilty of burglary, aiding and abetting theft, and aiding and abetting criminal damage to property. Leonsaco challenges the sufficiency of the evidence supporting the convictions. We affirm.

## FACTS

Leonsaco's convictions arise from a series of burglaries of cabins on Quamba Lake in Kanabec County over the Memorial Day weekend in 2012. Leonsaco's then-fiancée, M.T., invited Leonsaco to stay with her family at her stepfather's cabin. On Friday night, M.T. stayed up with Leonsaco until 2:30 a.m. When she went to bed, Leonsaco was drinking alone on the porch. Just before dawn Saturday morning, M.T. awoke and found that Leonsaco still was awake and was talking with a man and two women. She quarreled with one of the women until the guests left on foot. M.T. saw that Leonsaco was drinking from an unusual bottle with a long, wide neck and that Bud Light beer cans were strewn across the lawn.

At approximately 7:00 a.m. Saturday morning, M.T.'s stepfather, D.K., awoke and discovered that his van was parked in a different place from where he had left it the previous evening. He also noticed that the seat had been adjusted and that the odometer had gained 40 to 50 additional miles. D.K. found the keys to the van inside his cabin in the usual place.

D.K. then noticed that a next-door neighbor's cabin appeared to have been burglarized. He contacted law enforcement. Deputy Sheriff Cole Bangerter responded.

2

Deputy Bangerter found that the unoccupied cabin, which belonged to N.E., was missing several window screens. Deputy Bangerter determined that someone had entered the cabin through a window where cinder blocks had been stacked on the ground below. Inside the cabin, Deputy Bangerter saw that everything looked "out of place for a normal cabin," with papers scattered and cabinet doors left open. Deputy Bangerter soon discovered that two other nearby cabins, one belonging to W.C. and one belonging to C.D., also had been burglarized. Deputy Bangerter observed that the three burglarized cabins had been entered in similar ways and left in similar states of disarray.

Deputy Bangerter's investigation indicated that items were missing from each of the three burglarized cabins. In W.C.'s cabin, the missing items included consumer electronics, DVDs, and a bottle of Hungarian Tokaji wine, which has a distinctive long, wide neck. W.C. testified at trial that he had purchased the bottle in Hungary. Deputy Bangerter found an empty Tokaji bottle on the ground near the N.E. cabin. In W.C.'s cabin, Deputy Bangerter also found an empty Bud Light can in the kitchen sink. W.C. told the deputy that he does not drink Bud Light and that he did not have any Bud Light in the cabin before the burglary. Subsequent testing determined that DNA found on the beer can and on the Tokaji bottle matches Leonsaco's DNA. Each cabin's owner reported that consumer electronics and DVDs were missing. Another neighbor, C.M., reported that the tires on his vehicle had been slashed during the night while the vehicle was parked in his driveway.

In November 2012, the state charged Leonsaco with ten counts: (1) three counts of second-degree burglary (one for each cabin), in violation of Minn. Stat. § 609.582,

3

subds. 2(a)(1) and 2(a) (2010); (2) three counts of third-degree burglary (one for each cabin), in violation of Minn. Stat. § 609.582, subd. 3; (3) one count of theft, in violation of Minn. Stat. § 609.52, subds. 2(a)(1) and 3(3)(a) (2010); (4) one count of aiding and abetting theft, in violation of Minn. Stat. § 609.52, subds. 2(a)(1) and 3(3)(a); (5) one count of fourth-degree criminal damage to property, in violation of Minn. Stat. § 609.595, subd. 3 (2010); and (6) one count of aiding and abetting fourth-degree criminal damage to property, in violation of Minn. Stat. § 609.595, subd. 3.

The case was tried to a jury in March 2013. The state called nine witnesses in its case-in-chief: M.T., D.K., two cabin owners, a caretaker of one cabin, two deputy sheriffs, and two forensic scientists. Leonsaco did not testify but called one witness, M.T.'s mother, J.K.

The jury found Leonsaco guilty of three counts of second-degree burglary, three counts of third-degree burglary, aiding and abetting theft, and aiding and abetting criminal damage to property. The jury found Leonsaco not guilty of theft and criminal damage to property. The district court entered judgment and imposed concurrent sentences on three counts of second-degree burglary, one count of aiding and abetting theft, and one count of aiding and abetting criminal damage to property, the longest being 26 months of imprisonment. The district court did not adjudicate the third-degree burglary offenses because they are lesser-included offenses. Leonsaco appeals.

**D E C I S I O N**

Leonsaco argues that the evidence is insufficient to support the jury's verdicts with respect to each conviction for which he was convicted and sentenced.

4

When considering a claim of insufficient evidence, this court conducts "a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). We must assume that "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). "We will not disturb the verdict if the jury, acting with due regard for the presumption of innocence" and the requirement of proof beyond a reasonable doubt, could reasonably conclude the defendant was guilty of the crime charged. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004) (quotation omitted).

In reviewing the sufficiency of the evidence, we apply a heightened standard of review if the state's evidence on one or more elements of an offense consists solely of circumstantial evidence. *State v. Porte*, 832 N.W.2d 303, 309 (Minn. App. 2013) (citing *State v. Al-Naseer*, 788 N.W.2d 469, 473-75 (Minn. 2010); *State v. Leake*, 699 N.W.2d 312, 319-20 (Minn. 2005); *State v. Rhodes*, 657 N.W.2d 823, 840 (Minn. 2003)). In this case, it is undisputed that the state did not introduce any direct evidence that Leonsaco committed burglary, theft, or criminal damage to property; no witness testified that he or she actually saw Leonsaco commit any of the offenses. But the state introduced a voluminous amount of circumstantial evidence linking Leonsaco to the charged offenses. In closing argument, the prosecutor asked the jury to rely on that circumstantial evidence to infer that Leonsaco committed the alleged offenses, either by himself or with others.

Thus, it is appropriate for this court to apply the heightened standard of review applicable to circumstantial evidence.

When reviewing a conviction based on circumstantial evidence, we apply a two-step test to determine the sufficiency of the evidence. *State v. Moore*, 846 N.W.2d 83, 88 (Minn. 2014). First, we "identify the circumstances proved." *Id.* (citing *State v. Andersen*, 784 N.W.2d 320, 329-30 (Minn. 2010)). "In identifying the circumstances proved, we assume that the jury resolved any factual disputes in a manner that is consistent with the jury's verdict." *Id.* (citing *Andersen*, 784 N.W.2d at 329). At the second step of the circumstantial-evidence test, we "examine independently the reasonableness of the inferences that might be drawn from the circumstances proved," and then "determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Id.* at 88 (quotations omitted). We must consider the evidence as a whole and not examine each piece in isolation. *Andersen*, 784 N.W.2d at 332.

In this case, we note at the first step of the circumstantial-evidence test that the state proved the following circumstances. The three burglarized cabins were in the same vicinity and were unoccupied during the Memorial Day weekend. A similar method of entry was used at each cabin. The interior of each cabin was left in similar states of disarray, with similar items missing. At 10:30 p.m. on Friday night, the exterior of the N.E. cabin had not been disturbed, but it had been disturbed when D.K. awoke Saturday morning. When M.T. went to bed, Leonsaco stayed up. When she awoke a few hours later, around dawn, a man and two women were outside with Leonsaco. Leonsaco was

6

intoxicated and was drinking out of a bottle with a long, wide neck, and Bud Light beer cans were strewn around the yard. In the W.C. cabin, an empty Bud Light beer can was found in the sink, which contained the DNA of only one person, Leonsaco. Leonsaco's DNA was found on W.C.'s Tokaji bottle, which was found in the yard of the N.E. cabin. The keys to D.K.'s van were inside his cabin in their usual place, but his van was parked in a different place in the morning with 40 to 50 additional miles on the odometer. W.C. reported that kitchen knives were stolen from his cabin. The tires on C.M.'s vehicle, which was parked next to his own cabin, were punctured, apparently with a sharp knife. M.T.'s mother, J.K., previously was engaged to C.M.

Because Leonsaco was convicted of three different offenses, we apply the second step of the circumstantial-evidence test separately to each offense.

## A.    Burglary

The jury found Leonsaco guilty of three counts of second-degree burglary and three counts of third-degree burglary, but the district court adjudicated and imposed sentences only on the three counts of second-degree burglary. *See* Minn. Stat. § 609.04 (2010); *State v. Pflepsen*, 590 N.W.2d 759, 765-66 (Minn. 1999); *State v. LaTourelle*, 343 N.W.2d 277, 284 (Minn. 1984). A person is guilty of second-degree burglary if he enters a dwelling "without consent and with intent to commit a crime" or enters a dwelling "without consent and commits a crime while in the building, either directly or as an accomplice." Minn. Stat. § 609.582, subd. 2(a)(1).

During closing arguments, the prosecutor asked the jury to infer that Leonsaco burglarized W.C.'s cabin, either alone or with a group, based on circumstantial evidence

7

that his DNA was discovered on an empty beer can found in the kitchen sink and on W.C.'s Tokaji bottle. The prosecutor asked the jury to infer that Leonsaco burglarized all three cabins because the timing and manner of each burglary was so similar. The prosecutor also asked the jury to infer that Leonsaco, as opposed to another person, committed the burglaries because he was in a position to observe that the cabins were empty over the Memorial Day weekend, which typically would be a busy time at the lake, and because he was outside drinking all night and likely would have observed another person commit the burglaries. These inferences are reasonable in light of the circumstances proved, and the inferences are consistent with Leonsaco's guilt. *See Moore*, 846 N.W.2d at 88.

At the second step of the circumstantial-evidence test, we also must determine whether there are reasonable inferences that are inconsistent with guilt. *See id.* Leonsaco contends that the circumstances proved are inconsistent with his guilt based on two alternative theories. First, he contends that the circumstantial evidence is consistent with the inference that his early-morning guests burglarized the cabins without his assistance. Specifically, he contends that his guests may have placed Leonsaco's beer can in W.C.'s cabin and taken W.C.'s Tokaji wine bottle from the cabin and given it to Leonsaco. Second, Leonsaco contends that the evidence is consistent with the inference that he participated in the burglary of only W.C.'s cabin but not the other two cabins. The inferences Leonsaco wishes to draw from the circumstances proved by the state are not reasonable inferences. "The only rational hypothesis to be drawn" from the circumstances proved is that Leonsaco, either by himself or with others, broke into the

8

neighboring cabins and committed theft while inside each cabin. *See Andersen*, 784 N.W.2d at 332. We conclude that the circumstances proved are "consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Id.* at 330.

Thus, the evidence is sufficient to support the three convictions of second-degree burglary.

## B.     Aiding and Abetting Theft

The jury found Leonsaco guilty of one count of aiding and abetting theft. Leonsaco argues that the evidence is insufficient to prove that he engaged in the prohibited conduct and insufficient to prove that the value of stolen property exceeded the statutory threshold of $1,000.

### 1.     Evidence of Theft

A person is guilty of theft if he "intentionally and without claim of right takes, uses, transfers, conceals or retains possession of movable property of another without the other's consent and with intent to deprive the owner permanently of possession of the property." Minn. Stat. § 609.52, subd. 2(a)(1). "A person is criminally liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." Minn. Stat. § 609.05, subd. 1 (2010).

During closing arguments, the prosecutor asked the jury to draw the inferences described above in part A and, in addition, to infer that Leonsaco used D.K.'s van to pick up his three guests and transport stolen property. The prosecutor noted that Leonsaco was the tallest occupant of D.K.'s cabin and that the driver's seat of the van was pushed

9

back, the keys were located in the cabin, and the van had been driven 40 or 50 additional miles. These inferences are reasonable in light of the circumstances proved, and the inferences are consistent with Leonsaco's guilt. *See Moore*, 846 N.W.2d at 88.

Leonsaco contends that the evidence is consistent with the inference that he drove D.K.'s van for a purpose other than to transport stolen property. We believe that the inference Leonsaco wishes to draw from the circumstances proved by the state is not a reasonable inference because no other circumstances support that conclusion. Again, "the only rational hypothesis to be drawn" from the circumstances proved is that Leonsaco, either by himself or with others, broke into the neighboring cabins and committed theft while inside each cabin. *See Andersen*, 784 N.W.2d at 332. We conclude that the circumstances proved are "consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Id.* at 330.

### 2. Evidence of Value of Property

The statute under which Leonsaco was convicted requires the state to prove that "the value of the property or services stolen is more than $1,000 but not more than $5,000." Minn. Stat. § 609.52, subds. 2(a)(1) and 3(3)(a). Theft crimes may be consolidated, in which event the threshold value is determined on an aggregate basis. Minn. Stat. § 609.52, subd. 3(5) (2010). The word "value," as used in this statute, means "the retail market value at the time of the theft, or if the retail market value cannot be ascertained, the cost of replacement of the property within a reasonable time after the theft." Minn. Stat. § 609.52, subd. 1(3). The value of stolen goods may be determined by "direct and circumstantial evidence bearing on the value of the item in the retail

10

market." *State v. Stout*, 273 N.W.2d 621, 623 (Minn. 1978) (quotation omitted). A jury may rely on the testimony of the owner of the property concerning the approximate value of the property. *State v. Clipper*, 429 N.W.2d 698, 700 (Minn. App. 1988). "[A]s long as the evidence is adequate to show the fair market value of the property taken as being over [the statutory threshold], the value element of the crime of theft is established." *State v. Mastousek*, 287 Minn. 344, 352, 178 N.W.2d 604, 609 (1970).

In this case, N.E. and W.C. testified about the value of the property stolen from their respective cabins in terms of dollar amounts. N.E. testified with specificity that the total value of the items that were stolen from her cabin was $192.62. W.C. testified more generally that "we kind of priced it out for the attorney's office and it looked like it was somewhere in the area of just about $1,000." The caretaker of the third cabin, which belongs to C.D., did not testify in terms of dollar amounts but did describe in detail the property that was stolen; he testified that a DVD player and box of approximately 30 to 45 DVDs were missing.

Leonsaco contends that W.C.'s testimony shows that the total value of the property stolen from that cabin is no more than $620 and that the total loss is merely $812.62, which is the sum of the amount of N.E.'s loss and the amount of W.C.'s loss, as restated by Leonsaco. But Leonsaco's contention disregards W.C.'s testimony that the value of the property stolen from his cabin was "about $1,000." The jury is permitted to rely on that testimony. *See Clipper*, 729 N.W.2d at 700. We conclude that the evidence is sufficient to prove that the total value of stolen property was more than $1,000. Thus,

the evidence is sufficient to support the conviction of one count of aiding and abetting theft.

**C.      Aiding and Abetting Damage to Property**

The jury found Leonsaco guilty of one count of aiding and abetting fourth-degree criminal damage to property. A person is guilty of fourth-degree criminal damage to property if he "intentionally causes damage" to "another person's physical property without the other person's consent." Minn. Stat. § 609.595, subds. 1, 3. As stated above, "A person is criminally liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." Minn. Stat. § 609.05, subd. 1.

During closing arguments, the prosecutor asked the jury to draw the inferences described above in parts A and B and, in addition, to infer that Leonsaco aided and abetted criminal damage to property because the window screens of each burglarized cabin were slashed or crushed. This is a reasonable inference in light of the circumstances proved, and the inference is consistent with Leonsaco's guilt. *See Moore*, 846 N.W.2d at 88. Leonsaco does not offer any alternative inferences concerning the window screens that are inconsistent with guilt.

Leonsaco contends that the evidence is insufficient to prove that he aided and abetted criminal damage to property because the state did not prove that he punctured C.M.'s tires. Leonsaco is incorrect in asserting that his conviction of aiding and abetting fourth-degree criminal damage to property is based solely on damage to C.M.'s tires, not damage to the window screens of the cabins. The state amended the complaint at trial to

12

allege damage to the cabins.  *See* Minn. R. Crim. P. 17.05 (permitting amendment of complaint "at any time before verdict . . . if no additional or different offense is charged and if the defendant's substantial rights are not prejudiced"); *State v. Stephani*, 369 N.W.2d 540, 549 (Minn. App. 1985) (approving of amendment to complaint during trial to conform to evidence), *review denied* (Minn. Aug. 20, 1985).  In closing argument, the prosecutor asked the jury to find Leonsaco guilty based on both the damage to the cabins and the damage to the tires.  We need not analyze whether the state's evidence is sufficient to prove that Leonsaco aided and abetted the damage to C.M.'s tires because the evidence of damage to the cabins is sufficient to support the conviction of one count of aiding and abetting fourth-degree criminal damage to property.

**Affirmed.**