SIMON SNOWDEN *v.* THE STATE OF TENNESSEE.

1. CRIMINAL LAW. *Juror. Mentally incapacitated during trial. Practice.* If a juror is found to be mentally incompetent during the progress of a criminal trial, it is discretionary with the court to supply the place of the juror and proceed with the trial *de novo*, or to discharge the jury and continue the cause.

Code cited: Sec. 4028 and notes.

Case cited: State *v.* Curtis, 5 Hum., 601.

2. JOINT INDICTMENT FOR LARCENY. *Admissions of one defendant in absence of the other inadmissible. When.* It is not competent for the State to prove confessions of a co-defendant made in the absence of the prisoner to the effect that the prisoner and the other defendants had agreed to steal cattle for a butcher, and that the cattle stolen in this case was for the butcher, and that the prisoner had procured a note to be written that would enable them to sell the cattle; the confession having been made after the cattle were stolen. Nor is it made competent by proof that the witness had a conversation with the prisoner, and that after first denying that he had it, finally found and produced the note above referred to.

Snowden *v.* The State.

3. CONSPIRACY. *What admissions not competent.* When the common purpose is at an end, whether by accomplishment or abandonment, no one of the conspirators is permitted, by any subsequent act or declaration of his own, to affect the others.

<hr>

FROM SHELBY.

<hr>

Appeal from the Circuit Court.

No brief appears for Snowden.

ATTORNEY-GENERAL HEISKELL for the State.

Opinion by THE COURT.

The prisoner was jointly presented by the grand jury of the Bartlett Circuit Court of Shelby county, together with one John Wesley and one Sam Davy, for the larceny of two red steers and one red heifer.

At the December Term, 1871, the prisoner was put upon his trial. After the evidence was heard, and the argument was concluded, and after the jury had retired to consider of the case, they returned into court and reported that D. J. Davis, one of their number, was then, and had been since he was empanelled, labouring under an aberration of mind. Thereupon, the court having heard testimony on the point, and having examined the juror personally, and being satisfied that the juror was totally incapacitated to serve as a juror, directed that the panel be discharged, and the cause continued to the April Term.

To this action of the court the plaintiff excepted,

and at the April Term puts in a plea embodying these facts.

What action was had upon the plea, or whether any action of the court at all was invoked upon it, the record nowhere disclosed. This, however, is a matter of no consequence, the practice of his honor in this case being fully warranted by the ruling of this court in *The State* v. *Curtis*, 5 Hum., 601, the only difference in the cases being that in the case cited the juror, as we infer, was laboring under a bodily malady, while in the case in hand the juror was afflicted with a mental disorder.

It may be remarked that under our statute and decisions it is discretionary with the court to supply the place of the sick juror, and proceed to try the cause *de novo*, or to discharge the jury and continue the cause. See T. & S's Code, sec. 4028, and notes.

The next error assigned, however, by the prisoner is, we think, fatal to the verdict and judgment of conviction.

One W. B. Williamson, a witness for the State, was allowed by the court, over the prisoner's objection, to detail a confession or statement made by John Wesley to the witness in the prisoner's absense. In this confession Wesley stated that the prisoner and Sam Daly had agreed to furnish cattle to a butcher in Chelsea; that they agreed to steal cattle for the butcher; that the cattle stolen in this case were for the butcher, and that the prisoner and Daly had got him (Wesley) to drive them for him. Wesley further

stated that the prisoner had procured a note to be written that would enable them to sell the cattle.

The witness Williamson proves that he had a conversation with the prisoner, and that after first denying that he had it, finally found and produced the note above referred to. And this, it is said, cures the error of admitting the confession and statement made by Wesley.

We do not assent to this argument. If it were conceded that the possession of this note was evidence of a conspiracy between Wesley, Daly, and the prisoner to steal the cattle, still the evidence is liable to another objection. According to Wesley's statement the larceny was already complete, and he, in his confession to Williamson, was detailing a past transaction. This is evident from the fact deposed to by Williamson that he had been to Memphis, had seen the cattle in the butchers pen at Chelsea, and had returned home before Wesley's arrest; indeed, he directed a young man to arrest Wesley in consequence of having seen the cattle in Chelsea.

When the common purpose is at an end, whether by accomplishment or abandonment, no one of the conspirators is permitted by any subsequent act or declaration of his own to affect the others.

It is argued, however, by the Attorney General that although the theft was already committed when Wesley made his statement, that the sale of the cattle was not then accomplished, and the statement was made in furtherance of that object.

We do not think that this argument can be main-

tained.   It does not appear, in the first place, that the cattle were then unsold, and even if it did it is very hard to see how what Wesley said was in further of a common purpose to sell.

It may be that the other evidence in this record is sufficient to warrant a conviction.   But we are satisfied that the testimony we have commented on was improperly admitted.   We cannot tell what weight it had on the jury.   We therefore think it is due to the prisoner to set aside the verdict, and award a new trial.   Let a judgment be entered accordingly.