# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### January 16, 2002 Session

## STATE OF TENNESSEE v. NATHAN ALEX WEAVER

**Direct Appeal from the Circuit Court for Williamson County**
**No. I-700-238 and I-899-297     Donald P. Harris, Judge**

———————————

**No. M2001-00873-CCA-R3-CD - Filed April 15, 2003**

———————————

A Williamson County jury convicted the Defendant of attempt to possess with intent to sell or deliver ten pounds or more of marijuana and conspiracy to sell or deliver between ten and seventy pounds of marijuana. The trial court sentenced the Defendant as a multiple offender to consecutive sentences of four years' incarceration for attempt to possess with intent to sell or deliver ten pounds or more of marijuana and to two years' incarceration for conspiracy to sell or deliver between ten and seventy pounds of marijuana. In this appeal as of right, the Defendant presents the following issues for our review: (1) whether the trial court erred by failing to suppress evidence obtained as a result of a search warrant; (2) whether the trial court improperly allowed testimony regarding statements made by Defendant after the search; (3) whether the trial court erred in allowing the State to proceed on one count from an original presentment and one count from a superceding presentment; (4) whether the trial court properly denied the Defendant's motion for a judgment of acquittal; and (5) whether the trial court improperly allowed testimony concerning statements made by a non-testifying accomplice. Following oral argument, this Court ordered the parties to submit supplemental briefs concerning an additional issue: whether the Defendant was deprived of his right to confront a material witness and whether this was plain error. Having reviewed the record, we conclude that the Defendant's confrontation rights were violated in this case, but that the error was harmless beyond a reasonable doubt. We therefore affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JERRY L. SMITH and THOMAS T. WOODALL, JJ., joined.

Tony L. Maples, Murfreesboro, Tennessee, for the appellant, Nathan Alex Weaver.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Mary K. Harvey, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## I. PROCEDURAL HISTORY

In August 1999, the Williamson County Grand Jury returned a two-count presentment against the Defendant, Nathan Alex Weaver, charging him with (1) possession with intent to sell or deliver marijuana, a Schedule VI controlled substance, in an amount over ten pounds; and (2) attempt to possess with intent to sell or deliver marijuana in an amount over ten pounds. In July 2000, the Williamson County Grand Jury charged the Defendant with (1) two counts of possession with intent to sell or deliver marijuana in an amount between ten and seventy pounds and (2) one count of conspiracy to sell or deliver marijuana in an amount between ten and seventy pounds.[1] The second count of the superceding presentment charged the Defendant with committing the following overt act in furtherance of the conspiracy: "intentionally possess[ing] US Currency for the purpose of purchasing a controlled substance to-wit: Schedule VI Mari[j]uana which was to be delivered by John Chaney."

In September 2000, the Defendant filed a motion to dismiss both counts of the original presentment and count two of superceding presentment. The State filed a motion to amend count two of the superceding presentment, which was denied by the trial court. With regard to the first presentment, the trial court entered an order of <u>nolle prosequi</u> as to count one and denied the Defendant's motion to dismiss count two. With regard to the second presentment, the trial court entered an order of <u>nolle prosequi</u> as to the first count and granted the Defendant's motion to dismiss the second count. The trial court also merged count two of the original presentment into the second presentment. Thus, the Defendant proceeded to trial on count two of the original presentment, attempt to possess with intent to sell or deliver marijuana in an amount over ten pounds, and on count three of the superceding presentment, conspiracy to sell or deliver between ten and seventy pounds of marijuana.

Following a trial, a Williamson County jury found the Defendant guilty of both charges: (1) attempt to possess with intent to sell or deliver ten pounds or more of marijuana and (2) conspiracy to sell or deliver between ten and seventy pounds of marijuana. The jury also assessed a fine of $3,000 for each count. Following a sentencing hearing, the trial court sentenced the Defendant as a multiple offender to four years' incarceration for attempt to possess with intent to sell or deliver ten pounds or more of marijuana and to two years' incarceration for conspiracy to sell or deliver between ten and seventy pounds of marijuana. The court also ordered that the sentences be served consecutively.

The Defendant now appeals his conviction as of right, presenting the following issues for our review: (1) whether the trial court erred by failing to suppress evidence obtained as a result of a

---

[1] Count three of the second presentment specifically charged "NATHAN ALEX WEAVER, Jon Chaney, AND PERSONS WHOSE NAMES ARE NOT KNOWN TO THE GRAND JURY" with the crime of conspiracy to sell or deliver between ten and seventy pounds of marijuana.

search warrant; (2) whether the trial court improperly allowed testimony regarding statements made by Defendant about shoes found in the hotel room; (3) whether the trial court erred in allowing the State to proceed on count two of the original presentment; (4) whether the trial court properly denied the Defendant's motion for a judgment of acquittal; and (5) whether the trial court improperly allowed testimony concerning statements made by Jon Chaney. Following oral argument, this Court ordered the parties to submit supplemental briefs concerning an additional issue, which we will review on appeal: whether the Defendant was deprived of his right to confront a material witness and if so, whether this constituted plain error. After carefully reviewing the record, we affirm the judgments of the trial court.

## II. FACTS

The following evidence was presented at the Defendant's trial: Officer Todd Brackhahn, a state trooper employed by the Texas Department of Public Safety, testified that he had worked in law enforcement for nine years. He stated that in June 1999, he was stationed in northeast Texas, approximately one hundred miles northeast of Dallas. On June 21, 1999, he stopped a limousine for speeding. He testified that he approached the driver's side of the vehicle, and when the door opened, he smelled marijuana. Brackhahn stated that the driver of the vehicle appeared to be "unusually nervous" and that the driver's hands were shaking. Brackhahn also noticed that people in the back compartment of the limousine were making movements "like they were trying to do something." Brackhahn asked the driver and the "co-driver" to step out of the vehicle. Brackhahn recalled that when the co-driver stepped out of the limousine, Brackhahn smelled a "very strong[]" odor of marijuana in the car. Through questioning the men, Brackhahn learned that an individual named Jon Chaney, who was riding in the back of the limousine, had booked the limousine. Brackhahn reported that Chaney was unable to exit the vehicle because he was ill.

Brackhahn requested consent to search the vehicle and was granted consent by both the driver and the co-driver. Brackhahn testified that during his search of the limousine, he discovered approximately sixty pounds of marijuana in the trunk of the vehicle. He reported that the marijuana was packaged in cellophane and contained in a black leather bag and in a green duffle bag. Brackhahn stated that Chaney initially denied knowledge of the marijuana until Brackhahn discovered a prescription in Chaney's name inside a bag with the marijuana. After discovering the drugs, Brackhahn arrested the driver, co-driver, and Chaney and had the limousine towed to Sulphur Springs, Texas. He then turned over the investigation of the case to a narcotics officer, Andy Dunklin, who was present at the scene. Brackhahn reported that his vehicle was equipped with "in-car camera systems," and during his testimony, a video tape of the traffic stop was entered into evidence and viewed by the jury.

Brackhahn testified that after arresting the three individuals in the limousine, he locked the marijuana in his own evidence locker overnight and then gave it to Joe Don Abernathy the following morning. He stated that a "core sample" of the marijuana was later submitted for testing. He explained that the Texas Department of Public Safety does not have enough facilities to store all

marijuana seized and that as a result, only samples of large quantities of marijuana are sent for testing.

Lauaoi Hadefeh[2] testified that he was a self-employed limousine driver at the time of trial. He testified that on June 21, 1999, he picked up a client named Jon or Jonathan from the client's home in Grapevine, Texas. Hadefeh reported that the man wished to travel one-way to Nashville, Tennessee. Hadefeh testified that when he arrived at the client's home, he told the client, whom he had never met before, that he must pay "up front" for the limousine service. He recalled that the client went inside the home and emerged with $1,200 in cash for payment, which Hadefeh and a second driver split evenly. Hadefeh recalled that the client had two bags, which were very heavy.

Sergeant Andy Dunklin testified that he was assigned to the narcotics division of the Texas Department of Public Safety. He stated that he had been a police officer for twenty-two years and that he had spent eleven years investigating "interstate smuggling," which was his area of assignment at the time of the crime in this case. He explained, "I work with police officers and agencies that investigate organizations in the state of Texas and out that smuggle drugs out of the state of Texas."

Dunklin testified that in June of 1999, he was stationed in northeast Texas. He recalled that he was notified by a patrolman that a traffic stop had resulted in the seizure of drugs. Dunklin stated that he went to the scene and interviewed the occupants of a limousine, the vehicle that had been stopped. According to Dunklin, Jon Chaney, a passenger in the vehicle, told him that he was transporting the seized marijuana to room 209 of the Hilton Suites in Brentwood, Tennessee, where he was to meet Wesley Bell and "Alex Weaver" and pick up $32,000. Dunklin testified that Chaney gave him a piece of paper from his wallet on which the words "Brentwood Hilton 209" were written. Chaney told Dunklin that he was to then take a return flight on Southwest Airlines to Dallas and give the money to someone named Brian. Dunklin reported that Chaney was later charged with possession of marijuana in an amount over fifty pounds, but he stated that the case against Chaney did not proceed to trial because Chaney died in August 1999.

On cross-examination, Dunklin testified that in Texas, twenty-five percent of all forfeited assets is given to the Texas Department of Public Safety. He stated that outside of Texas, the state of Texas must reach a mutual agreement regarding asset sharing. Dunklin explained that he sent a letter to the Brentwood Police Department regarding how to divide the assets in this case. In addition, he testified that in drug cases, it is customary for officers to become involved with the delivery of the drugs after the drugs are discovered and to "take down" other individuals involved in the transaction upon delivery. He explained that a controlled delivery was not performed in this case because Chaney was too ill to participate in the delivery. He stated that Chaney had leukemia and had received a treatment on the day of the traffic stop. Dunklin testified that he therefore

---

[2] Because the trial transcript in this case is a video record, the exact spellings of several of the witness' names are not included in the record. Furthermore, due to the poor sound quality on the video tapes, which comprise a large portion of the record on appeal, we were unable to verify the actual spellings of the names of the few witnesses, including Hadefeh, who offered the spellings of their names for the record. Therefore, for purposes of this appeal, the spellings of the names of most witnesses in this case are our own best effort.

contacted the Brentwood Police Department and relayed all information provided by Chaney instead of attempting a controlled delivery.

Clay Burnett Cloud, III, testified that he had been employed as a forensic chemist, more specifically a drug analyst, for the Texas Department of Public Safety Crime Laboratory in Tyler, Texas for eighteen months at the time of trial. Cloud testified that as a general rule, he followed all operational guidelines for evidence handling and testing. He specified that when a sample arrives in the laboratory for testing, he must make sure that all paperwork is correctly filled out and that the evidence is properly sealed and initialed. He stated that he then assigns the sample a unique case number, labels it, and places it into a vault, where it remains until he later removes it for testing. Cloud emphasized that the laboratory does not accept any evidence that is not sealed.

Cloud testified that he received two sealed bags of evidence in this case which were labeled with Brackhahn's identification number and with regard to which Jon Chaney was listed as a suspect. He reported that the laboratory received the evidence from J.D. Abernathy on June 23, 1999. Cloud stated that 50.7 pounds of marijuana were initially taken into evidence, but that only six pounds and five randomly selected samples were retained. He explained that because the laboratory does not have the facilities to store all marijuana seized as evidence, the laboratory generally retains five to ten pounds and five random samples of a given sample and sends off the remaining amount to be burned. Cloud stated that the five random samples are saved in case a request is later made for further testing of the substance seized as evidence.

Lieutenant Jeff Hughes of the Brentwood Police Department testified that at the time of trial, he had eighteen years of experience in law enforcement. He reported that he was working as a lieutenant in technical support, an administrative position, at the time of trial, and he stated that in June of 1999, he was assigned as a detective in the Criminal Investigation Division. He recalled that on June 21, 1999, the head of the Criminal Investigation Division, Lieutenant Tommy Jones, imparted to him and other officers information originally received from Andy Dunklin regarding a traffic stop in Texas. At Jones' request, Hughes called Dunklin. Hughes testified that he learned that a man named Jon Chaney had been found to be in possession of what was believed to be marijuana. Hughes also learned that Chaney was traveling to Tennessee to deliver the marijuana to Wesley Bell or Alex Weaver in room 209 of the Hilton Suites located in Brentwood. According to Hughes, Chaney was to meet Bell or Weaver at 10:00 a.m. on June 21, 1999.

Based on this information, a search warrant was obtained. Hughes and other officers executed the warrant on the morning of June 21, 1999. Hughes stated that when they reached the Hilton Suites, the officers first made management aware that they would be executing the search warrant. They then proceeded to room 209, where they "knocked and announced." The officers next attempted to use a card key to enter the room, but a security latch prevented them access to the room. They cut the latch with a bolt cutter and then entered the room. Hughes reported that in the living area of the suite, which the officers entered first, a male white subject was asleep in his underwear on a couch that had been made into a bed. Hughes recalled that the room was in disarray. In the adjacent bedroom, officers found a white male and a white female asleep in the bed. Hughes stated

that the female in the bed was nude and that he believed that the male in the bed was also nude. Hughes identified the man on the couch as Scott Hall and reported that Hall had died prior to trial. He identified the female in the bed as Haley Luffman and the male in the bed as the Defendant.

Hughes testified that the officers separated the men from the woman, tried to ascertain the identities of the subjects, and attempted to verify which vehicles in the parking lot belonged to them. Hughes stated that the officers then transported the three subjects to police headquarters before conducting a search of the suite. Hughes recalled that the Defendant could not find his shoes, so, to the best of Hughes' recollection, the Defendant was not wearing shoes when he left for the police department.

Hughes testified that during the search of the hotel suite, officers found a piece of paper on the desk in the bedroom on which were handwritten notes, including what appeared to be a confirmation number, an 800 phone number, a flight number, and flight times. When the officers called the phone number, they discovered that it was the number for Southwest Airlines and that the information on the note corresponded with a reservation made for Jon Chaney. The officers also found $32,346.61 in the room. Some of the money was found scattered about the room. The bulk of the money, $30,950, was found inside a plastic grocery bag which was stuffed inside a blue duffle bag, along with more handwritten notes and a pair of tennis shoes. The blue duffle bag was placed inside a green duffle bag, along with clothing; a wallet containing the Defendant's identification and $1,375 in cash; and a hotel receipt in the Defendant's name, which indicated that the Defendant had paid cash for the room. The green duffle bag was found beside the bed in the bedroom. Hughes reported that the money inside the blue bag smelled very strongly of marijuana. Finally, the officers found what appeared to be gambling information on scraps of paper and writings seized from the room.

Hughes testified that personal belongings seized from the room were later released to the occupants of the room. He stated that Haley Luffman claimed clothes, a pair of shoes, an inhaler, and a bathing suit. According to Hughes, nothing was released to Scott Hall except his clothing and what was on his person at the time of the search. Hughes testified that the Defendant claimed the tennis shoes found in the blue bag and the green duffle bag containing his clothing and other personal effects. Hughes stated that the Defendant actually told him that the tennis shoes found in the blue bag belonged to him. Finally, Hughes reported that no one claimed the blue bag containing the money.

Lisa Stewart, custodian of records for passenger information for Southwest Airlines, testified that the confirmation number found on the piece of paper in the bedroom of room 209 matched a reservation made for Jon Chaney. The reservation was for a flight from Nashville to Dallas, which was to depart from Nashville at 4:20 p.m. on June 21, 1999. Stewart reported that a check of all "flown tickets" from the flight indicated that no one actually used the reservation. In addition, Stewart reported that the reservation was made by someone named Jon through the reservation center in Dallas. According to Stewart, the flight had not been paid for.

Susie May, the office manager at the Hilton Suites in Brentwood, testified regarding hotel records. May stated that the hotel records indicated that the Defendant checked into room 209 at the Hilton Suites on June 20, 1999 and that he was due to check out on June 21, 1999. She reported that the Defendant paid $111.12 in cash for the room. May also stated that the hotel records indicated that only one adult was listed as an occupant of the room.

## III. ANALYSIS

### A. MOTION TO SUPPRESS EVIDENCE

The Defendant first argues that the trial court erred by failing to suppress evidence obtained through a search of his hotel room at the Hilton Suites in Brentwood. He contends that the search was conducted pursuant to a defective search warrant. He argues that the search warrant is defective because the affidavit upon which it was based failed to set forth either the basis of the informant's knowledge or proof of the informant's reliability. See State v. Jacumin, 778 S.W.2d 430, 432 (Tenn. 1989).

When reviewing a trial court's ruling on a motion to suppress, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Findings of fact made by a trial court in ruling on a motion to suppress are binding upon this court unless the evidence preponderates against the findings. See id. However, "[t]he application of the law to the facts found by the trial court . . . is a question of law which this court reviews de novo." State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

The Fourth Amendment to the U.S. Constitution provides that search warrants shall issue only "upon probable cause, supported by oath or affirmation." The Tennessee Constitution provides "that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offences are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted." Tenn. Const. Art. I, § 7. In Tennessee, "[a] search warrant can only be issued on probable cause, supported by an affidavit, naming or describing the person, and particularly describing the property, and the place to be searched." Tenn. Code Ann. § 40-6-103. The affidavit "must set forth facts tending to establish the grounds of the application, or probable cause for believing that they exist." Id. § 40-6-104; Tenn. R. Crim. P. 41(c).

As a preliminary matter, we must address whether the informant in this case, namely Jon Chaney, is a "citizen informant" or a "criminal informant." We must do so in order to determine the standard by which to review the affidavit in this case. While search warrants based upon information garnered by citizen informants are "adequate when the information supplied by the affidavit intrinsically accredits the informant," State v. Smith, 867 S.W.2d 343, 346-47 (Tenn. Crim. App. 1993), search warrants based upon information provided by criminal informants are subject to a more stringent standard of review. See State v. Jacumin, 778 S.W.2d 430, 436 (Tenn. 1989).

Citizen informants have been described as "'informants not from the criminal milieu.'" Smith, 867 S.W.2d at 346 (quoting State v. Melson, 638 S.W.2d 342, 354 (Tenn. 1982)). A citizen informant acquires his or her information through first-hand experience and acts in the interest of public safety. State v. Luke, 995 S.W.2d 630, 636 (Tenn. Crim. App. 1998). Thus, information provided by citizen informants is presumed reliable. State v. Stevens, 989 S.W.2d 290, 293 (Tenn. Crim. App. 1999). By contrast, criminal informants, described as "those from the criminal milieu," id. at 291, generally supply information to law enforcement personnel not "'in the spirit of a concerned citizen, but often . . . in exchange for some concession, payment, or simply out of revenge against the subject'." Smith, 867 S.W.2d at 347 (quoting State v. Paszek, 184 N.W.2d 836, 842-43 (Wis. 1971)). Criminal informants are often individuals who have previously provided information which has proven to be reliable to law enforcement. See State v. Moon, 841 S.W.2d 336, 339 (Tenn. Crim. App. 1992).

The informant in this case, Jon Chaney, is not a typical criminal informant; there is no indication in the record that he was ever involved with providing information to law enforcement or that he received money in exchange for his services. Nonetheless, we conclude that Chaney is a criminal informant for purposes of our analysis. Officer Brackhahn testified that when he spoke with Chaney following the traffic stop, he offered Chaney the opportunity to help himself. He also stated that he told Chaney that "if he wanted to show the judge and the jury at the time of his trial that he was willing to cooperate," he should talk to a narcotics officer. Chaney offered information to police only after this discussion, indicating that Chaney acted with the expectation of receiving some concession or favor from law enforcement or the judicial system. Furthermore, Chaney was stopped in a limousine containing approximately fifty pounds of marijuana, and  he admitted to law enforcement personnel that he was involved in the delivery of the marijuana to another party. These facts indicate that Chaney was of the "criminal milieu." Stevens, 989 S.W.2d at 291. For these reasons, we conclude that Chaney qualifies as a criminal informant.

When an informant is from the criminal milieu, the court must apply the two-pronged Aguilar-Spinelli test as the standard by which probable cause should be measured to determine whether the issuance of a search warrant based upon information garnered from the criminal informant was proper under Article 1, § 7 of the Tennessee Constitution. State v. Jacumin, 778 S.W.2d 430, 436 (Tenn. 1989); see generally Spinelli v. United States, 393 U.S. 410 (1969); Aguilar v. Texas, 378 U.S. 108 (1964).[3] In Aguilar, the United States Supreme Court concluded that

> [a]lthough an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity

---

[3] We note that the federal standard used to review a search warrant based upon information provided by a criminal informant differs from that adopted by our state supreme court: In Illinois v. Gates, 462 U.S. 213 (1983), the United States Supreme Court abandoned the two-pronged analysis established by its decisions in Aguilar and Spinelli in favor of a "totality-of-the-circumstances analysis." Id. at 238; Jacumin, 778 S.W.2d at 432.

need not be disclosed, was "credible" or his information "reliable." Otherwise, "the inferences from the facts which lead to the complaint" will be drawn not "by a neutral and detached magistrate," as the Constitution requires, but instead, by a police officer "engaged in the often competitive enterprise of ferreting out crime," or . . . by an unidentified informant.

378 U.S. at 114 (quoting <u>Giordenello v. United States</u>, 357 U.S. 480, 486 (1958); <u>Johnson v. United States</u>, 333 U.S. 10, 14 (1948)) (citations omitted). In <u>Spinelli</u>, the United States Supreme Court affirmed its holding in <u>Aguilar</u>, applying the two-pronged test set forth in the former case. 393 U.S. at 412-13.

Thus, the two-pronged test includes a "basis of knowledge" prong and a "veracity" prong. <u>Jacumin</u>, 778 S.W.2d at 432. "Under the first or 'basis of knowledge' prong, facts must be revealed which permit the magistrate to determine whether the informant had a basis for his information that a certain person had been, was or would be involved in criminal conduct or that evidence of crime would be found at a certain place." <u>Moon</u>, 841 S.W.2d at 338. With regard to the "veracity" prong, "a conclusory allegation of reliability is insufficient. What must be shown in the affidavit are underlying circumstances from which the magistrate can conclude that the informant is credible or his information is reliable." <u>Id.</u> at 339 (citation omitted).

We further note that in <u>Spinelli</u>, the Supreme Court stated,

If the tip is found inadequate under <u>Aguilar</u>, the other allegations which corroborate the information contained in the hearsay report should then be considered. At this stage as well, however, the standards enunciated in <u>Aguilar</u> must inform the magistrate's decision. He must ask: Can it fairly be said that the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass <u>Aguilar</u>'s tests without independent corroboration? . . . A magistrate cannot be said to have properly discharged his constitutional duty if he relies on an informer's tip which -- even when partially corroborated -- is not as reliable as one which passes <u>Aguilar</u>'s requirements when standing alone.

393 U.S. at 415-16.

In <u>Jacumin</u>, though, the court warned against applying the two-pronged test hypertechnically. 778 S.W.2d at 436. Also, it approved, as it previously had in <u>State v. Bryan</u>, 769 S.W.2d 208, 211 (Tenn. 1989), the United States Supreme Court's statement in <u>Illinois v. Gates, supra</u>, relative to the duties of magistrates and reviewing courts regarding the determination of probable cause.

The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

462 U.S. at 238-39, 103 S.Ct. at 2332. Thus, review of the affidavit in this case begins by examining its contents under the two-pronged test in a commonsense, non-hyper-technical fashion.

> The affidavit supporting the search warrant in this case provides, in pertinent part, as follows:
>
> Personally appeared before me, **Detective Richard Hickey of Brentwood Police Department**, and made oath that he has good ground and belief, and does believe that **Wesley Bell and Alex Weaver, occupants of room 209, Hilton Suites, Brentwood, Tennessee,** are in possession of the following described property, namely:
>
> **Evidence of the crime of attempt to possess marijuana with the intent to sell or deliver, to wit: U.S. currency: $33,200.00 to purchase illegal drugs and records, logs, receipts, scales, and other paper or items commonly associated with illegal drug transactions.**
>
> . . . .
>
> And his reasons for such belief are that **on June 21, 1999, at approximately 3:00 a.m., a limousine carrying passenger John** [sic] **Chaney, white male DOB 10/23/78, home address of 3048 Rich View Place, Grape Vine** [sic]**, Texas, 76050, was stopped for weaving on Interstate I-30 in Sulphur Springs, Texas by Trooper Todd Brachan** [sic] **with Texas Department of Safety. Consent to search the vehicle was obtained from the limousine driver and search revealed two large twenty-five pound bags of what is believed to be marijuana was found in trunk. John Chaney** [sic] **told Sargent** [sic] **Andy Duklin** [sic] **with Texas Department of Safety, the above information and that Chaney was to deliver the marijuana to Wesley Bell and Alex Weaver at 10:00 a.m. June 21, 1999 at room 209 in the Brentwood, Tennessee Hilton Suites. Chaney was to collect $33,200.00 in cash from Bell and Weaver. Chaney was then to take a taxi to the Nashville International Airport and fly back to Texas. Also found in Chaney's pocket was a 3 x 3 white paper with writing of number "209 Brentwood Hilton". Affiant was contacted by Sargeant** [sic] **Andy Duklin** [sic] **at approximately 8:00 a.m. on June 21, 1999 with the above information.**
>
> **Affiant has learned at 9:45 a.m. on June 21, 1999 that Alex Weaver is the registered guest of room 209. This information was verified by Catherine Franklin, Manager of the Hilton Suites Hotel.**[4]

We will first address the "veracity" prong of the Aguilar-Spinelli test. In this case, there is no indication in the record that the criminal informant has a previous history of providing information to law enforcement, thereby establishing the informant's credibility, and no such information is included in the contested affidavit. However, the affidavit contains information which corroborates that provided by the informant to police; specifically, the affidavit contains the affiant's statement that he verified information provided by the informant that the Defendant was the

---

[4] A lengthy description of the place to be searched, in this case room 209 of the Hilton Suites in Brentwood, and its location is also included in the affidavit.

registered occupant of room 209 of the Hilton Suites in Brentwood. The Tennessee Supreme Court has indicated that "independent police corroboration could make up for deficiencies in either prong" of the Aguilar-Spinelli test. Jacumin, 778 S.W.2d at 436; see also Moon, 841 S.W.2d at 340.

Furthermore, this Court has stated that "admissions of crime may carry their own indicia of credibility." Moon, 841 S.W.2d at 340. This Court emphasized, however, that such a conclusion necessarily requires that "the statement against penal interest be the one which provides the reason for the search," id., and thus cautioned that "absent the affidavit . . . providing how the admission against interest relates to the criminal activity, the targeted premises or the defendant, it carries no weight toward enhancing the reliability of the informant's information." Id. In the present case, the criminal informant's statement was clearly against penal interest because he specifically implicated himself in a drug delivery. Information is included in the affidavit which specifies how the informant's admission is related to the criminal activity: The affidavit states that the informant was to deliver the marijuana in the trunk of the limousine to the Defendant and another individual, that he was to collect money from them, and that he was then to fly back to Texas. The inclusion of the informant's statement against penal interest in the affidavit bolsters the informant's reliability. Therefore, despite the lack of a specific statement in the affidavit concerning the informant's credibility, it appears that the "veracity" prong of the two-part standard for review of a warrant based upon information provided by a criminal informant has been satisfied in this case.

We now turn to the "basis of knowledge" prong of the Aguilar-Spinelli test. The affidavit alleges that Jon Chaney was a passenger in a limousine traveling on Interstate 30 in Sulphur Springs, Texas, and that the trunk of the limousine contained two twenty-five pound bags of "what is believed to be marijuana." The affidavit also alleges that a "3 x 3 white paper with writing of number '209 Brentwood Hilton'" was found in Chaney's pocket. The affidavit alleges that Chaney told a Texas Department of Safety officer that Chaney was to deliver the marijuana to Wesley Bell and Alex Weaver at 10:00 a.m. on June 21, 1999 at room 209 in the Brentwood Hilton Suites and was to collect $33,200 in cash from Bell and Weaver and fly back to Texas. Finally, the affidavit alleges that at 9:45 a.m. on June 21, 1999, Alex Weaver was "the registered guest of room 209," as verified by the manager of the hotel.

In our view, Chaney's possession of a large quantity of marijuana in the trunk of a vehicle in which he was traveling on an Interstate highway with a 3 x 3 white paper in his pocket on which was written "209 Brentwood Hilton" are all facts which would permit a magistrate to determine that Chaney had a basis for his assertions that the Defendant would be involved later that day in criminal conduct in Brentwood, Tennessee. These were all facts that were observed by law enforcement officers and thus were the type of "independent police corroboration" that the Tennessee Supreme Court has indicated could make up for "deficiencies in either prong" of the Aguilar-Spinelli test. Jacumin, 778 S.W.2d at 436. Further, Williamson County law enforcement officers independently corroborated the fact that Alex Weaver was indeed the "registered guest of room 209" at 9:45 a.m. on the same day that Chaney had informed the Texas officers of his plans to deliver the marijuana to Tennessee in exchange for $33,200 in cash from Weaver and Bell.

We conclude that the magistrate issuing the search warrant was provided with ample information in the affidavit, including the "basis of knowledge" of Chaney, to make a practical, commonsense decision that there was a fair probability that evidence of a crime would be found in room 209 of the Brentwood Hilton on June 21, 1999, and thus that the issuing magistrate in this case had a substantial basis for concluding that probable cause existed for the issuance of the search warrant. Although the trial court used an incorrect analysis,[5] the conclusion is the same. This issue is without merit.

## B. STATEMENTS MADE BY THE DEFENDANT

The Defendant next argues that the trial court erred by failing to suppress or to strike all references to statements which he made concerning a pair of tennis shoes that were found in a bag in room 209 of the Hilton Suites. Specifically, the Defendant argues that the trial court erred by allowing Detective Jeff Hughes to testify that the Defendant claimed the shoes. According to Detective Hughes, the shoes were found in a blue duffle bag which had been placed inside a green duffle bag. Hughes testified that the blue bag contained the majority of the money recovered from the hotel room, which bore a strong odor of marijuana; a pair of tennis shoes; and handwritten notes. Hughes testified that the green bag contained clothing, personal effects, more cash, and a wallet containing the Defendant's identification. Hughes stated that to the best of his recollection, of the three individuals who were found in room 209 at the time of the search, only the Defendant left the hotel room without shoes. Hughes stated that as best he recalled, the Defendant was not wearing shoes when he was questioned at police headquarters after the search. Hughes stated that the shoes were ultimately released to the Defendant at some point after the search. He explained that the police released the shoes to the Defendant because the officers "didn't want to send the Defendant away without any shoes." In addition, Hughes reported that the Defendant actually claimed the shoes and the green bag. The Defendant now contends that he requested an attorney and that any statements made by him regarding the shoes and his identification of the shoes should not have been allowed because they were made after his request for an attorney.

The Fifth Amendment to the United States Constitution provides in part that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Similarly, Article I, Section 9 of the Tennessee Constitution states that "in all criminal prosecutions, the accused . . . shall not be compelled to give evidence against himself." Tenn. Const. art. I, § 9. In Miranda v. Arizona, the United States Supreme Court held that pursuant to the Fifth and Fourteenth Amendments' prohibition against compelled self-incrimination, police officers must advise a defendant of his or her right to remain silent and of his or her right to counsel before they may initiate custodial interrogation. 384 U.S. 436, 479 (1966). Miranda warnings are required when a person is subject to custodial interrogation by law enforcement. See id. "Custodial" means that the subject of questioning is in "custody or otherwise deprived of his freedom by the authorities in any

---

[5]The trial court determined that because Sgt. Dunklin of the Texas Department of Safety provided the information to the affiant, Detective Richard Hickey, there was no need to explore the reliability of Chaney. Because Dunklin was passing along information provided by Chaney, we respectfully disagree.

significant way." Id. at 478. "Interrogation" has been interpreted to refer to questions that law enforcement officers should know are reasonably likely to elicit an incriminating response. Rhode Island v. Innis, 446 U.S. 291, 301 (1980).

If Miranda warnings are not given, statements elicited from the individual may not be admitted for certain purposes in a criminal trial. Stansbury v. California, 511 U.S. 318, 322 (1994). A waiver of constitutional rights must be made "voluntarily, knowingly, and intelligently." Miranda, 384 U.S. at 444. The state has the burden of proving the waiver by a preponderance of the evidence. State v. Bush, 942 S.W.2d 489, 500 (Tenn. 1997). In determining whether a defendant has validly waived his Miranda rights, courts must look to the totality of the circumstances. State v. Middlebrooks, 840 S.W.2d 317, 326 (Tenn.1992).

Having reviewed the record in this case, we find no reference to a request for an attorney by the Defendant. However, testimony by Detective Hughes indicates that after the Defendant received Miranda warnings, he refused to speak to officers. This was arguably an invocation of the Defendant's Fifth Amendment privilege against self-incrimination. See Miranda, 384 U.S. 436, 473-74 ("If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease.")

Nonetheless, nothing in the record before us indicates that any statement made by the Defendant concerning his shoes was in response to questioning by police, and thus, we are unable to determine that such a statement was made during custodial interrogation. In fact, it is unclear from the record what statement the Defendant may have made concerning the shoes. The burden of preparing a complete and adequate record concerning the issues presented on appeal rests upon the appealing party, see Tenn. R. App. P. 24(b), and the record with regard to this issue is unclear. It is clear, however, from Detective Hughes testimony that the Defendant claimed the shoes and that the shoes were released to the Defendant at the police department. We find no error in the admission of this testimony.

Even assuming that the trial court erred by admitting testimony concerning the shoes into evidence, however, we conclude that any such error was harmless. See Tenn. R. Crim. P. 52(a). Evidence was presented at trial that the shoes were found inside a bag, along with most of the money seized from the room, and that this bag, in turn, had been placed inside a second bag. Uncontroverted testimony established that the second bag also contained the Defendant's wallet, in which identification belonging to the Defendant was found. We thus conclude that this issue is without merit.

## C. COUNT TWO OF ORIGINAL INDICTMENT

As previously stated, the Williamson County Grand Jury charged the Defendant in August 1999 with: (1) possession with intent to sell or deliver marijuana, a Schedule VI controlled substance, in an amount over ten pounds and (2) attempt to possess with intent to sell or deliver marijuana in an amount over ten pounds. In July 2000, the Williamson County Grand Jury filed a second presentment, charging the Defendant with (1) two counts of possession with intent to sell

or deliver marijuana in an amount between ten and seventy pounds and (2) one count of conspiracy to sell or deliver marijuana in an amount between ten and seventy pounds. Ultimately, the trial court dismissed three of the five counts, and the Defendant proceeded to trial on the following two charges: attempt to possess with intent to sell or deliver marijuana in an amount over ten pounds, charged in count two of the original presentment, and conspiracy to sell or deliver between ten and seventy pounds of marijuana, charged in count three of the superceding presentment.[6] The Defendant now argues that the trial court erred by allowing the State to proceed to trial on the second count of the original indictment.

As a preliminary matter, we note that we review decisions concerning consolidation of indictments under an abuse of discretion standard. Spicer v. State, 12 S.W.3d 438, 442-43 (Tenn. 2000); State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999). Therefore, a trial court's decision to consolidate or sever offenses will not be reversed unless the "court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997).

Article I § 14 of the Tennessee Constitution provides that "no person shall be put to answer any criminal charge but by presentment, indictment, or impeachment." In Tennessee, the law is well-settled that the State "has the sole duty, authority, and discretion to prosecute criminal matters." State v. Spradlin, 12 S.W.3d 432, 436 (Tenn. 2000). As stated by the United States Supreme Court, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978). Furthermore, it is within the State's discretion to seek a superceding indictment, defined as "an indictment obtained without the dismissal of a prior indictment," where jeopardy has not attached on the first indictment. State v. Harris, 33 S.W.3d 767, 771 (Tenn. 2000). "Thus, the State may obtain a superseding indictment at any time prior to trial without dismissing the pending indictment and may then select the indictment under which to proceed at trial." Id.

Rules regarding the consolidation of presentments and offenses are included in the Tennessee Rules of Criminal Procedure. The Defendant cites Rule 8(a), concerning the mandatory joinder of offenses, in support of his argument. This rule provides that

> [t]wo or more offenses shall be joined in the same indictment, presentment, or information, with each offense stated in a separate count, or consolidated pursuant to Rule 13 if the offenses are based upon the same conduct or arise from the same criminal episode and if such offenses are know to the appropriate prosecuting official at the time of the return of the . . . presentment(s) . . . and if they are within the jurisdiction of a single court.

Tenn. R. Crim. P. 8(a). However, we find two other rules to be more pertinent to our analysis of this case: Rule 13(a) of the Tennessee Rules of Criminal Procedure provides as follows: "The court may order consolidation of two or more indictments, presentments, or informations for trial if the offenses

---

[6] See supra discussion regarding the procedural history of the case.

and all defendants could have been joined in a single indictment, presentment or information pursuant to Rule 8." Rule 8(b), which allows for permissive joinder of offenses, states, "Two or more offenses may be joined in the same indictment, presentment or information, with each offense stated in a separate count, or consolidated pursuant to Rule 13 if the offenses constitute parts of a common scheme or plan or if they are of the same or similar character." Tenn. R. Crim. P. 8(b).

Thus, to determine whether the trial court properly consolidated counts from two separate presentments, we must first address whether the offenses could have been joined in a single indictment pursuant to Rule 8. See id. Here, the Defendant was charged with conspiracy to sell or deliver a large amount of marijuana and with attempting to sell or deliver the marijuana. For consolidation purposes, we consider these two counts to be part of a common scheme or plan, see id., and therefore, we conclude that consolidation of the presentments was proper in this case. See Tenn. R. Crim. P. 13(a).

We further note that when the State obtained the superceding presentment in this case, jeopardy had not attached to the charges in the first presentment. The State acted within its broad discretion when it elected to proceed to trial on one count from each presentment, and we find no injustice to the Defendant resulting from the consolidation of the two charges. We thus find no abuse of discretion by the trial court in allowing the State to proceed to trial on count two of the original presentment and on count three of the superceding presentment.

## D. DENIAL OF MOTION FOR JUDGMENT OF ACQUITTAL

The Defendant argues that the trial court erred by failing to grant his motion for judgment of acquittal. See generally Tenn. R. Crim. P. 29. This Court has noted that "[i]n dealing with a motion for a judgment of acquittal, unlike a motion for a new trial, the trial judge is concerned only with the legal sufficiency of the evidence and not with the weight of the evidence." State v. Hall, 656 S.W.2d 60, 61 (Tenn. Crim. App. 1983). The standard for reviewing the denial or grant of a motion for judgment of acquittal is analogous to the standard employed when reviewing the sufficiency of the convicting evidence after a conviction has been imposed. See State v. Ball, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998); State v. Adams, 916 S.W.2d 471, 473 (Tenn. Crim. App. 1995). An appellate court must apply this same standard when reviewing the denial of a motion for judgment of acquittal. See Adams, 916 S.W2d at 473.

When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this

Court substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.

As previously stated, the Defendant was convicted of the following two crimes: (1) attempt to possess with intent to sell or deliver ten pounds or more of marijuana and (2) conspiracy to sell or deliver between ten and seventy pounds of marijuana. After reviewing the record in this case, we conclude that sufficient evidence was presented to support both convictions. A state trooper and a detective testified that a traffic stop of a limousine in Texas resulted in the seizure of bags which were later determined by a drug analyst to contain 50.7 pounds of marijuana. The limousine driver testified that the vehicle had been leased by a client named Jon or Jonathan, who was riding in the back of the limousine at the time of the traffic stop. The detective testified that he interviewed Jon Chaney, the passenger. Testimony by the detective revealed an admission by Chaney that Chaney was to transport the marijuana to a specific hotel room in Brentwood, deliver it to the Defendant and another individual, pick up $32,000, fly back to Texas the following day, and give the money to another individual. The room to which Chaney referred was registered in the Defendant's name. When officers conducted a search of the room on the following day, they found the Defendant and other individuals asleep in the room; $32,346.61 in cash, most of which smelled strongly of marijuana; and notes which corresponded with a Southwest Airlines reservation made in Chaney's name for that afternoon. In addition, testimony was presented at trial that the Defendant later claimed a pair of tennis shoes found in a bag which contained the bulk of the money in the room. This is sufficient evidence from which the jury could have concluded that the Defendant attempted to possess ten or more pounds of marijuana and that he intended to sell the marijuana. This evidence is also sufficient evidence from which the jury could have concluded that the Defendant conspired to sell or deliver between ten and seventy pounds of marijuana. Therefore, because we conclude that the evidence presented at the Defendant's trial was legally sufficient to support his convictions, we conclude that the trial court did not err by denying the Defendant's motion for judgment of acquittal.

## E. STATEMENTS AGAINST PENAL INTEREST

The Defendant contends that the trial court erred by allowing Sergeant Andy Dunklin to testify concerning statements made by Jon Chaney on the night prior to the Defendant's arrest. As previously stated, Sergeant Dunklin testified that at the time of his investigation of this case, he interviewed Jon Chaney, the individual riding in the limousine that was stopped in Texas. According to Dunklin, Chaney admitted that he was transporting the marijuana found in the trunk of the limousine to room 209 of the Hilton Suites in Brentwood, where he was to give it to Wesley Bell and Alex Weaver. Chaney reported that he was also to pick up $33,200 from the room and transport it

back to Texas. Dunklin testified that although Chaney was charged with possession of over fifty pounds of marijuana, the case against Chaney never proceeded to trial because Chaney died in August 1999. Jon Chaney's death certificate was entered into evidence.

Prior to trial, the Defendant filed a motion in limine seeking to bar admission of these statements by Jon Chaney. The trial court denied the motion, declaring Chaney unavailable as a witness and ruling that the statements by Chaney were statements against penal interest. The Defendant now argues that the admission of these statements by Chaney was error. Although the Defendant concedes that Chaney was clearly unavailable to testify at trial, he contends that "nothing in the statements is against [Chaney's] penal interest." The Defendant asserts, "In fact, when the statements were made, the declarant believe[d] he was making them in his own best interest."

Rule 804 of the Tennessee Rules of Evidence provides, in pertinent part, as follows:
The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
. . . .
. . . Statement Against Interest. – A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

Tenn. R. Evidence 804(b)(3). The Advisory Commission Comments to the rule state that "[t]his rule follows modern Tennessee law by admitting declarations against penal interest as well as those against pecuniary or proprietary interest."

We find no error by the trial court in admitting the statements of Jon Chaney over objection by the defense. Chaney was clearly an unavailable witness, see Tenn. R. Evid. 804(a)(4), and because Chaney admitted to Sergeant Dunklin that he was transporting drugs to Tennessee in exchange for money, the contested statements clearly implicate Chaney in a crime. Furthermore, we note that Chaney was subsequently indicted for possession of over fifty pounds of marijuana. We therefore conclude that Chaney's statements were admissible pursuant to Rule 804 of the Tennessee Rules of Evidence as statements against interest.

## F. RIGHT TO CONFRONTATION

Finally, the Defendant contends that he was deprived of his constitutional right to confront a material witness against him, specifically Jon Chaney. Although the Defendant failed to raise this issue at trial, in his motion for new trial, or in his initial brief on appeal, he contends that the deprivation of his right to confront a material witness constitutes plain error. We note that the burden of identifying issues for review on appeal and setting forth argument in support of those issues falls upon the appellant, see Tenn. R. App. P. 27(a)(4), (7), and that the failure of an appellant to include an issue in his or her motion for a new trial generally results in the waiver of that issue on appeal. See Tenn. R. App. P. 3(e) (stating "that in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions

granted or refused, misconduct of the jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial"); see also Tenn. R. App. P 36(a) (stating that relief shall not be granted "to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error"). However, Tennessee Rule of Appellate Procedure 36(b), Tennessee Rule of Evidence 103(d), and Tennessee Rule of Criminal Procedure 52(b) allow this Court to take notice of "plain errors" not raised in the proceedings below. State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000).

The Confrontation Clause of the United States Constitution guarantees a criminal defendant the right to confront witnesses against him or her. See U.S. Const. amend. VI; Davis v. Alaska, 415 U.S. 308, 315 (1974). This right is also protected by the Tennessee Constitution. See Tenn. Const., art. I, § 9.[7] The right of confrontation encompasses the right to cross-examine. See Barber v. Page, 390 U.S. 719, 721 (1968). It is the principal means by which the believability of a witness and the truth of his testimony are tested. See Davis, 415 U.S. at 316. The right to confront and cross-examine is not absolute however, and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. See Chambers v. Mississippi, 410 U.S. 284, 295 (1973).

In State v. Henderson, 554 S.W.2d 117 (Tenn. 1977), the Tennessee Supreme Court reviewed the standards for determining when an out-of-court statement satisfies a defendant's confrontation rights under both the United States and the Tennessee Constitutions. The court stated that at least three criteria must be met in order to satisfy the Confrontation Clause: (1) The evidence to be presented must not be "'crucial'" or "'devastating,'" id. at 119 (citing Dutton v. Evans, 400 U.S. 74, 87 (1970)); (2) "the State must make a good faith effort to secure the presence of the person whose statement is to be offered against the defendant," id. at 119-20; and (3) "the evidence offered under a hearsay exception must bear its own 'indicia of reliability.'" Id. at 120 (citing Dutton, 400 U.S. at 89); see also State v. Armes, 607 S.W.2d 234, 237 (Tenn. 1980). Evidence is deemed "crucial" if it constitutes an essential element of the crime. Henderson, 554 S.W.2d at 119; State v. Kennedy, 7 S.W.3d 58, 65 (Tenn. Crim. App. 1999).

However, the Henderson test does not apply to statements that fall within a firmly rooted hearsay exception. See State v. Alley, 968 S.W.2d 314, 317-18 (Tenn. Crim. App. 1997). Reliable hearsay which comports with an exception to the hearsay rule does not violate a defendant's confrontation rights. See State v. Causby, 706 S.W.2d 628, 631 (Tenn. 1986) (citing Ohio v. Roberts, 448 U.S. 56, 66 (1980)); see also Kennedy, 7 S.W.3d at 65. Such statements are deemed "so inherently trustworthy that adversarial testing would add little to their reliability." Kennedy, 7 S.W.3d at 66. "Established practice, in short, must confirm that statements falling within a category of hearsay inherently 'carry special guarantees of credibility' essentially equivalent to, or greater

---

[7] Because the Tennessee Constitution requires "face-to-face" confrontation, it affords a defendant greater constitutional protection than does the United States Constitution. See Neil P. Cohen et al., Tennessee Law of Evidence § 802.3 (3d ed. 1995) (citing State v. Deuter, 839 S.W.2d 391 (Tenn. 1992)).

than, those produced by the Constitution's preference for cross-examined trial testimony." Lilly v. Virginia, 527 U.S. 116, 128 (1999) (quoting White v. Illinois, 502 U.S. 346, 356 (1992)).

The first question, then, for our consideration is whether the statements made by Jon Chaney fall within a firmly rooted hearsay exception. We have affirmed the trial court's ruling that the statements made by Jon Chaney to Sergeant Dunklin were statements against penal interest. See Tenn. R. Evid. 804(b)(3). We must thus address whether statements against penal interest qualify as a firmly rooted hearsay exception.

Statements made by a co-conspirator during the course of and in furtherance of the conspiracy, see Tenn. R. Evid. 803(1.2)(E), have been deemed to fall within a firmly rooted hearsay exception, thus obviating the need for independent inquiry into their reliability. See Bourjaily v. United States, 483 U.S. 171, 183-84 (1987); State v. Alley, 968 S.W.2d 314, 317 (Tenn. Crim. App. 1997) (citing Strady v. State, 45 Tenn. 300, 309 (1868); Owens v. State, 84 Tenn. 1 (1885); Snowden v. State, 66 Tenn. 482 (1874); Sweat v. Rogers, 53 Tenn. 117, 120 (1871)). We conclude that Jon Chaney qualifies as a co-conspirator or accomplice for the purpose of our analysis. A panel of this Court has stated that an accomplice is one who "'knowingly, voluntarily, and with common intent unites with the principal offender in the commission of a crime,' i.e., one subject to indictment for the same offense charged against the principal offender." State v. Ronald Eugene Rickman, No. W1999-01744-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 449, at *167-68 (Tenn. Crim. App., Jackson, May 17, 2002) (citation omitted).[8] However, although Chaney qualifies as a co-conspirator, his statements were not made during his involvement in or furtherance of the conspiracy in this case; rather, they were made after his arrest. We find no authority in Tennessee law placing statements made by a co-conspirator that were not made as part of the conspiracy within a firmly rooted hearsay exception. Furthermore, "the question whether the statements fall within a firmly rooted hearsay exception for Confrontation Clause purposes is a question of federal law." Lilly, 527 U.S. at 125; see also Ronald Eugene Rickman, 2002 Tenn. Crim. App. LEXIS 449, at *124.

In Lilly v. Virginia, the United States Supreme Court addressed the issue of whether an accused's right to confrontation was violated by the admission into evidence at trial of "a nontestifying accomplice's entire confession that contained some statements against the accomplice's penal interest and others that inculpated the accused." 527 U.S. at 120. Reiterating prior rulings, see id. at 134 n.5, the Court held that "accomplices' confessions that inculpate a criminal defendant are not within a firmly rooted hearsay exception to the hearsay rule as that concept has been defined in our Confrontation Clause jurisprudence." Id. at 134. In so ruling, the Court deemed such statements "inherently unreliable." Id. at 131. The Court explained, "'[W]hen one person accuses another of a crime under circumstances in which the declarant stands to gain by inculpating another, the accusation is presumptively suspect and must be subjected to the scrutiny of cross-examination.'" Id. at 132 (quoting Lee v. Illinois, 476 U.S. 530, 541 (1986)). Therefore,

_____

[8] We also note that when the facts are undisputed regarding a witness's participation in the crime, whether he is an accomplice is a question of law for the trial court. State v. Perkinson, 867 S.W.2d 1, 7 (Tenn. Crim. App. 1992).

-19-

we conclude that the statements against penal interest made by Jon Chaney, a nontestifying accomplice, which inculpate the Defendant are not within a firmly rooted hearsay exception.

Having concluded that Chaney's statements do not fall within a firmly rooted hearsay exception, we turn now to the Henderson test. See Henderson, 554 S.W.2d at 119-20. The first prong of the test requires that the evidence to be admitted must not be "crucial" or "devastating." Id. at 119. In this case, it appears that Chaney's statements were offered "'to prove an essential element of the crime or connect the defendant directly to the commission of the crime,'" id. (quoting State v. Matousek, 178 N.W.2d 604, 608 (1970)), and thus, the statements constituted "crucial" or "devastating" evidence. Id. The second prong of the test requires the State to make a good faith effort to secure the presence of the declarant. See id. at 119-20. In this case, because the State entered into evidence a copy of the Chaney's death certificate, the State fulfilled its duty with regard to the second prong. Finally, the Henderson test requires that the evidence to be admitted "bear its own 'indicia of reliability.'" Id. at 120 (citing Dutton, 400 U.S. at 89). As we have previously concluded, the statements by Chaney were not inherently reliable and do not bear a separate "indicia of reliability." Id. Thus, two prongs of the Henderson test were not met in this case, and for this reason, the admission into evidence of statements made by Jon Chaney to police following his arrest resulted in a violation of the Defendant's confrontation rights. The statements should not have been admitted at trial.

Our next consideration is whether the trial court's error in admitting the contested statements by Chaney constitutes plain error. This Court has set forth five factors to be considered when deciding whether an error constitutes a "plain error":
    (a) the record must clearly establish what occurred in the trial court;
    (b) a clear and unequivocal rule of law must have been breached;
    (c) a substantial right of the accused must have been adversely affected;
    (d) the accused did not waive the issue for tactical reasons; and
    (e) consideration of the error is "necessary to do substantial justice."
State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994) (footnotes omitted). The Adkisson test has been formally adopted by our supreme court as the test to be utilized when reviewing a record for plain error. See Smith, 24 S.W.3d at 282-83. After applying the above factors to the present case, we conclude that the admission into evidence of Chaney's statements to police was not plain error.

Chaney's statements to police were corroborated in every detail by other evidence that was properly presented to the jury. Therefore, we are unable to conclude that the Defendant's confrontation rights were adversely affected for purposes of our "plain error" analysis. In this case, the admission of Chaney's statements to police was harmless beyond a reasonable doubt. In our view, even without the statements of Chaney, the direct and circumstantial evidence against the Defendant is overwhelming. The jury heard evidence of the arrest of a man in a limousine on the interstate highway in Texas with approximately sixty pounds of marijuana in the trunk of the vehicle. The limousine driver testified that he had been hired by his passenger for a one-way trip to Nashville, Tennessee, and had been paid $1,200 in cash, which was split with a second driver. The limousine passenger had in his wallet a piece of paper on which the words "Brentwood Hilton 209" were

written.  This evidence, along with the evidence obtained pursuant to the search warrant, allows us to confidently say, on the whole record, that the constitutional error of admitting Chaney's statements to police was harmless beyond a reasonable doubt.  Thus, consideration of the error is not "necessary to do substantial justice" and the error is not "plain error."

Accordingly, we AFFIRM the judgments of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE